IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

STATE OF ARIZIONA, *Appellant*,

*v.*

ROBERT GEAR, *Appellee*.

No. 1 CA-CR 13-0852
FILED 11-20-14

---

Appeal from the Superior Court in Navajo County
No. S0900CR201300089
The Honorable Ralph E. Hatch, Judge

**AFFIRMED**

---

COUNSEL

Navajo County Attorney's Office, Holbrook
By Galen Wilkes, Brad Carlyon
*Counsel for Appellant*

Kent Law Group PLLC, Phoenix
By Kimberly A. Kent, David J. Klink
*Counsel for Appellee*

---

**OPINION**

Presiding Judge Patricia K. Norris delivered the Opinion of the Court, in which Judge Lawrence F. Winthrop and Judge John C. Gemmill joined.

---

**N O R R I S**, Judge:

¶1        Appellant State of Arizona charged Defendant/Appellee Robert L. Gear Jr., N.M.D., D.C., with forgery and fraudulent schemes and artifices for falsely stating he had reviewed a confidential informant's medical records in certifying the informant for access to medical marijuana. Dr. Gear moved to dismiss the indictment, arguing the Arizona Medical Marijuana Act ("AMMA") granted him immunity from criminal prosecution. The superior court agreed, and the State appealed.

¶2        The fundamental issue presented in this appeal is whether the AMMA bars the State from prosecuting a physician for allegedly misrepresenting (negligently or otherwise) he had reviewed the last 12 months of a patient's medical records from other treating physicians when certifying that "in [his] professional opinion the patient [was] likely to receive therapeutic or palliative benefit from the medical use of marijuana." *See* Ariz. Rev. Stat. ("A.R.S.") section 36-2801(18) (2014).[1] We hold it does.

**FACTS AND PROCEDURAL HISTORY**

I.      The Arizona Medical Marijuana Act

¶3        A majority of Arizona voters enacted the AMMA by ballot initiative in 2010. *See* Proposition 203, 2011 Ariz. Sess. Laws 2724, 2724-50 (codified at A.R.S. §§ 36-2801 to 36-2819 (2014)). The "purpose of [the AMMA] is to protect patients with debilitating medical conditions, as well as their physicians and providers, from arrest and prosecution, criminal and other penalties and property forfeiture if such patients engage in the medical use of marijuana." Proposition 203, § 2(G), 2011 Ariz. Sess. Laws at 2725. In furtherance of this aim, the AMMA provides that a "qualified

---

[1]Although the Arizona Legislature amended certain statutes cited in this decision after the date of Dr. Gear's alleged offenses, the revisions are immaterial to the resolution of this appeal. Thus, we cite to the current version of these statutes.

patient" with a "debilitating medical condition" may obtain a registry identification card from the Arizona Department of Health Services ("DHS") and with it, immunity from State prosecution for marijuana acquisition, possession, and use within the AMMA's limits. *See* A.R.S. §§ 36-2801(3), (13), -2804.02, -2811(B). To facilitate the medical use of marijuana, the AMMA also immunizes physicians from prosecution for certifying patients for access to medical marijuana as discussed in more detail below. *See* A.R.S. § 36-2811(C).

**¶4** Under the AMMA, a patient applies for a registry card by submitting, *inter alia*, a physician's written certification. *See* A.R.S. §§ 36-2801(18), -2804.02(A)(1). By regulation, DHS requires patients to submit the written certification on a DHS-provided form ("DHS Form").[2] Ariz. Admin. Code ("A.A.C.") R9-17-202(F)(5)(2012). The DHS regulations require the certifying physician to identify the patient's "debilitating medical condition" and certify he or she has taken certain steps to confirm the diagnosis, including reviewing the past 12 months of the patient's medical records from other treating physicians and checking the patient's profile on the Arizona Board of Pharmacy Controlled Substances Prescription Monitoring Program database. *See id.* at (c)-(i). The regulations also require the certifying physician to attest that in his or her "professional opinion, the qualifying patient is likely to receive therapeutic or palliative benefit from the . . . medical use of marijuana to treat or alleviate the qualifying patient's debilitating medical condition" and "the information provided in the written certification is true and correct." *Id.* at (k), (m).

II.    Dr. Gear's Alleged Offenses

**¶5** On September 1, 2012, a Navajo County drug task force confidential informant ("C.I.") visited Dr. Gear for the purpose of obtaining a written certification in connection with an undercover investigation of an alleged illicit medical marijuana cooperative. The C.I. completed a medical questionnaire and a medical records statement provided by Dr. Gear's staff. The C.I. disclosed information about her medical history and physical condition on the medical questionnaire. On the medical records statement, the C.I. disclosed she had seen other physicians within the past 12 months, but did not "have a complete set of medical records" with her. The C.I.

---

[2]Section 36-2803(A)(2) authorizes DHS to establish the form and content of the registration application.

agreed she would either request that her records be sent to Dr. Gear before her next visit or would bring the records to his office on her next visit.

¶6         Dr. Gear examined the C.I., and based on his examination and the information the C.I. provided to him, certified the C.I. for medical marijuana use.  Dr. Gear completed the DHS Form, and certified, *inter alia*, that he had "reviewed the qualifying patient's medical records, including medical records from other treating physicians from the previous 12 months."    A.A.C.  R9-17-202(F)(5)(i)(i).    Dr. Gear  also  attested  "the information provided in this written certification is true and correct."  *See id.* at (m).  Dr. Gear, however, had not yet reviewed the C.I.'s medical records from other treating physicians for the previous 12 months.

¶7         A grand jury indicted Dr. Gear on one count of forgery, under A.R.S. § 13-2002 (Supp. 2014), and one count of fraudulent schemes and artifices, under A.R.S. § 13-2310 (2010), for falsely certifying he had reviewed the C.I.'s medical records from other treating physicians.  The superior court granted Dr. Gear's motion to dismiss the indictment, ruling the  AMMA's  physician  immunity  provision,  A.R.S.  §  36-2811(C), immunized Dr. Gear from criminal prosecution on the charges.

## DISCUSSION

¶8         The State argues that in dismissing the indictment against Dr. Gear, the superior court misconstrued the physician immunity provision of the AMMA. The State's appeal thus presents an issue of statutory interpretation which we review de novo.  *See Ariz. Citizens Clean Elections Comm'n v. Brain*, 234 Ariz. 322, 325, ¶ 11, 322 P.3d 139, 142 (2014).

¶9         We begin our analysis with the language of A.R.S. § 36-2811(C):

> A physician shall not be subject to arrest, prosecution or penalty in any manner or denied any right or privilege, including but not limited to civil penalty or disciplinary action by the Arizona board of medical examiners or by any other business, occupational or professional licensing board or bureau, *based solely on providing written certifications or for otherwise stating that, in the physician's professional opinion, a patient is likely to receive therapeutic or palliative*

> *benefit from the medical use of marijuana* to treat or
> alleviate the patient's debilitating medical
> condition or symptoms associated with the
> debilitating medical condition, but nothing in
> this chapter prevents a professional licensing
> board from sanctioning a physician for failing to
> properly evaluate a patient's medical condition
> or otherwise violating the standard of care for
> evaluating medical conditions.

(Emphasis added.).

¶10 As an initial matter, the State argues the immunity afforded by A.R.S. § 36-2811(C) applies only to a physician's professional opinion that "a patient is likely to receive therapeutic or palliative benefit from the medical use of marijuana." This argument, however, misconstrues the scope of the immunity granted by A.R.S. § 36-2811(C).

¶11 The relevant statutory language—"providing written certification *or for otherwise stating* that, in the physician's professional opinion, a patient is likely to receive therapeutic or palliative benefit from the medical use of marijuana"—is in the disjunctive. A.R.S. § 36-2811(C) (emphasis added). "Or" is "a disjunctive particle used to express an *alternative* or *to give a choice* of one among two or more things." *Boynton v. Anderson*, 205 Ariz. 45, 49 n.2, ¶ 15, 66 P.3d 88, 92 n.2 (App. 2003) (quoting *State v. Pinto*, 179 Ariz. 593, 595, 880 P.2d 1139, 1141 (App. 1994)). As used in A.R.S. § 36-2811(C), "or" clarifies that a physician is immune from prosecutions arising from "providing written certifications" and from prosecutions arising from stating an opinion that "a patient is likely to receive therapeutic or palliative benefit from the medical use of marijuana." The inclusion of immunity for professional opinions made outside of a written certification provides an alternative circumstance under which the State cannot prosecute a physician; it does not limit or define the immunity given for providing a written certification.

¶12 Making a similar argument but focusing on what constitutes a "written certification," the State next argues a "written certification" only encompasses a physician's written professional opinion, and not the additional statements DHS requires a physician to make pursuant to regulation, which as relevant here, requires a physician to state he or she has reviewed the patient's "medical records from other treating physicians from the previous 12 months." A.A.C. R9-17-202(F)(5)(i)(i). Under the

AMMA, "written certification" is a defined term and encompasses more than a physician's professional opinion.

¶13        The AMMA defines "written certification" as:

> [A] document dated and signed by a physician, stating that in the physician's professional opinion the patient is likely to receive therapeutic or palliative benefit from the medical use of marijuana to treat or alleviate the patient's debilitating medical condition or symptoms associated with the debilitating medical condition.  The physician must:
>
> (a) Specify the qualifying patient's debilitating medical condition in the written certification.
>
> (b) Sign and date the written certification only in the course of a physician-patient relationship after the physician has completed a full assessment of the qualifying patient's medical history.

A.R.S. § 36-2801(18).

¶14        As defined, a written certification includes more than a physician's professional opinion.  It requires the physician to enter into a physician-patient relationship, complete a full assessment of the patient's medical history, specify the patient's debilitating medical condition, and sign and date the certification "only in the course" of that relationship and only after completing that assessment.  *Id.* at (a), (b).  By regulation, DHS has essentially described what a physician must do to complete "a full assessment of the qualifying patient's medical history," *id.* at (b),  which, as relevant here, includes stating he or she has reviewed the patient's "medical records from other treating physicians from the previous 12 months." A.A.C. R9-17-202(F)(5)(i)(i).[3]

---

[3]The AMMA itself does not expressly require the physician to review the prior 12 months of the patient's medical records from other treating physicians.  *See* A.R.S. §§ 36-2801 to 2819.  Neither party has argued DHS exceeded its rulemaking authority in adopting this requirement. Accordingly, we have assumed without deciding that DHS has not exceeded its rulemaking authority in adopting this requirement.

¶15     Dr. Gear's statement that he had reviewed the C.I.'s medical records from other treating physicians, then, is part and parcel of his statutory obligation to complete "a full assessment of the qualifying patient's medical history" in providing a written certification.  A.R.S. § 36-2801(18)(b).  Accordingly, Dr. Gear did not lose his statutory immunity merely because he completed the mandated DHS Form, which, pursuant to regulation, requires a physician to make certain statements not explicitly provided for by the AMMA, in completing "a full assessment of the qualifying patient's medical history." *Id.*

¶16     Finally, we come to the heart of the State's argument on appeal.  The State proposes a construction of A.R.S. § 36-2811(C) that distinguishes between *providing* and *preparing* written certifications, with the statutory immunity applying only to the former but not the latter.  Congruently, the State portrays the charges against Dr. Gear as arising from his conduct in preparing the written certification, and therefore, outside the immunity afforded by A.R.S. § 36-2811(C).  We disagree.

¶17     In construing statutes, we apply a word's "usual and commonly understood meaning unless the legislature clearly intended a different meaning." *In re Nelson*, 207 Ariz. 318, 322, ¶ 16, 86 P.3d 374, 378 (2004).  And, we apply this same principle when we interpret a voter-approved initiative.  *Sedona Grand, LLC v. City of Sedona*, 229 Ariz. 37, 40, ¶ 11, 270 P.3d 864, 867 (App. 2012).  "To determine the ordinary meaning of a word, we may refer to established and widely used dictionaries." *Stout v. Taylor*, 233 Ariz. 275, 278, ¶ 12, 311 P.3d 1088, 1091 (App. 2013).

¶18     The word "providing" has multiple common meanings.  *See, e.g.*, *Webster's Third New International Dictionary* 1827 (Phillip Babcock Gove et al. eds., 1993) (listing four distinct definitions for "provide"); *The Oxford English Dictionary* 713 (R.W. Burchfield et al. eds., 2d ed. 1989) (listing nine distinct definitions for "provide").  Definitions of "provide" relevant here include: (1) "[t]o furnish or supply (a person, etc.) with something," (2) "[t]o equip or fit out (a person, etc.) with what is necessary for a certain purpose," *id.*, and (3) "to supply for use." *Webster's Third New International Dictionary* at 1827.

¶19     An uncompleted DHS Form is not a "written certification." *See* A.R.S. § 36-2801(18) ("'Written certification' means a document dated and signed by a physician . . . .").  Therefore, to furnish or supply a patient with a written certification, a physician must deliver a completed DHS

Form. Preparation and thus completion of the DHS Form are essential steps in the process of "providing written certifications." A.R.S. § 36-2811(C). Furthermore, the definitions of "provide" quoted above require the delivery of something useful or appropriate for a particular purpose. Under the AMMA, patients only have use for completed certifications. *See* A.R.S. §§ 36-2801(18), -2804.02(A)(1); A.A.C. R9-17-202. Thus, the scope of A.R.S. § 36-2811(C)-immunity extends beyond mere delivery of the certification to the patient; it also encompasses a physician's actions in preparing and completing the written certification.

**¶20** Even assuming, for the sake of argument, that A.R.S. § 36-2811(C) is subject to more than one reasonable interpretation, "secondary principles of statutory interpretation" including "the context of the statute, the language used, the subject matter, its historical background, its effects and consequences, and its spirit and purpose" support our decision. *See Ariz. Citizens Clean Elections Comm'n*, 234 Ariz. at 325, ¶ 11, 322 P.3d at 142.

**¶21** In enacting the AMMA, the voters explicitly barred prosecution of a physician for providing "written certifications" "or for otherwise stating" that certain patients may benefit from "the medical use of marijuana." A.R.S. § 36-2811(C). This prohibition is essential to the "purpose of" the AMMA which is "to protect patients with debilitating medical conditions, as well as their physicians . . . from arrest and prosecution . . . if such patients engage in the medical use of marijuana." Proposition 203, § 2(G), 2011 Ariz. Sess. Laws at 2725. As discussed above, a physician's review of a patient's medical history is an integral part of the formulation of a physician's professional opinion and the certification process. Criminal scrutiny and prosecution of physicians for certifying patients for medical marijuana use would have a chilling effect on the voluntary participation of physicians, and, thereby, hinder qualifying patients' efforts to obtain competent medical advice regarding medical marijuana, its medical risks, and its alleged therapeutic and palliative benefits.

**¶22** Our construction of A.R.S. § 36-2811(C) is supported by related statutes which ensure that physicians cannot, with impunity, falsely certify patients for medical marijuana. In 2012, the Arizona Legislature passed A.R.S. §§ 32-3215 (Supp. 2013) and 36-2810(E)(4) (2014). H.B. 2035, 50th Leg., 2d Reg. Sess. (2012) (enacted). Section 36-2810(E)(4) authorizes DHS to notify the relevant medical board "if the department believes a physician has committed an act of unprofessional conduct." Section 32-3215(A), in turn, provides that "it is an act of unprofessional conduct" for a

physician "to recommend medical marijuana . . . for other than a debilitating medical condition as defined in § 36-2801." Section 32-3215 also requires the State's medical boards to report to the Arizona Legislature, Governor, and DHS "[t]he number of notifications received from [DHS] and from the public of suspected unprofessional conduct that relate to medical marijuana recommendations," and "[t]he number of investigations conducted as a result" of such notifications. A.R.S. § 32-3215(B). Read together, these statutes create a regulatory mechanism to address allegedly false or inappropriate medical marijuana certifications.

¶23        Our interpretation is further supported by another provision of A.R.S. § 36-2811(C), that states the statute does not "prevent[] a professional licensing board from sanctioning a physician for failing to properly evaluate a patient's medical condition or otherwise violating the standard of care for evaluating medical conditions."  Furthermore, had the drafters of the AMMA intended to carve out allegedly false statements from the immunity provided by § 36-2811(C), they could easily have done so. *See, e.g.*, Mont. Code Ann. § 50-46-331(2) (2011) ("A physician who purposely and knowingly misrepresents any information required under 50-45-310 [medical marijuana written certification requirements] is guilty of a misdemeanor . . . ."); Vt. Stat. Ann. tit. 18, § 4474b(b) (2011) ("A health care professional who has participated in a patient's application process [for medical marijuana] shall not be subject to arrest, prosecution, or disciplinary action . . . , penalized in any manner, or denied any right or privilege under state law, except for giving false information [to a law enforcement officer to avoid or help another avoid arrest or prosecution].").

¶24        In sum, we hold the AMMA's physician immunity provision, A.R.S. § 36-2811(C), barred the State's prosecution of Dr. Gear for allegedly falsely completing the DHS Form.

## CONCLUSION

¶25        For the foregoing reasons, we affirm the superior court's dismissal of the indictment against Dr. Gear.



Ruth A. Willingham · Clerk of the Court
F I L E D : jt