IN THE

# ARIZONA COURT OF APPEALS
### DIVISION TWO

---

THE STATE OF ARIZONA,
*Appellant*,

*v.*

JEREMY ALLEN MATLOCK,
*Appellee*.

No. 2 CA-CR 2014-0274
Filed May 27, 2015

---

Appeal from the Superior Court in Pima County
No. CR20134266
The Honorable Richard S. Fields, Judge

**REVERSED AND REMANDED**

---

COUNSEL

Barbara LaWall, Pima County Attorney
By Nicolette Kneup, Deputy County Attorney, Tucson
*Counsel for Appellant*

Lori J. Lefferts, Pima County Public Defender
By David J. Euchner, Assistant Public Defender, Tucson
*Counsel for Appellee*

---

**OPINION**

Judge Vásquez authored the opinion of the Court, in which
Presiding Judge Kelly and Judge Howard concurred.

---

V Á S Q U E Z, Judge:

**¶1**         The State of Arizona appeals from the trial court's order dismissing criminal charges against appellee Jeremy Matlock. We are asked to determine whether a registered qualifying patient under the Arizona Medical Marijuana Act (AMMA) is immune from prosecution pursuant to A.R.S. § 36-2811(B)(3) for selling marijuana to another registered qualifying patient. For the following reasons, we reverse the dismissal and remand the case for further proceedings.

## Factual and Procedural Background

**¶2**         The relevant facts are undisputed. Matlock is a registered qualifying patient under the AMMA authorized to use and cultivate marijuana for medical purposes. In March 2013, an officer with the Tucson Police Department saw Matlock's online posting in which he offered to provide marijuana plants to other medical marijuana cardholders authorized to cultivate. In his post, Matlock requested a "$25 donation" per plant. Posing as a cardholder, the officer contacted Matlock and arranged a meeting.

**¶3**         At that meeting, the officer showed Matlock a medical marijuana card indicating he was authorized to cultivate. The officer then gave Matlock $75, and Matlock gave him three marijuana plants. Shortly thereafter, other officers arrested Matlock and searched his residence, where they seized marijuana, marijuana plants, and equipment used for marijuana cultivation. A grand jury indicted Matlock for sale of marijuana weighing less than two pounds, production of marijuana weighing less than two pounds, and possession of drug paraphernalia.[1]

---

[1]Matlock filed a motion to remand to the grand jury for a redetermination of probable cause. He argued an officer "falsely testified that . . . Matlock was not authorized to cultivate marijuana" and "the grand jury was incorrectly instructed that the AMMA does not permit patient-to-patient transfers for something of value." After the state agreed to the remand "to correct the inadvertent omissions from the factual record," Matlock withdrew his motion as

¶4            Matlock filed a motion to dismiss pursuant to Rule 16.6(b), Ariz. R. Crim. P.   He argued the indictment was "insufficient as a matter of law" because, as a registered qualifying patient under the AMMA, he was protected by § 36-2811(B)(3), which he maintained allows "patient-to-patient transfers [of marijuana] in exchange for something of value."   Alternatively, he asserted that the rule of lenity applied and § 36-2811(B)(3) should be interpreted in his favor because it "does not give proper notice that the conduct of receiving something of value in a patient-to-patient transfer would be outside the protections of the AMMA."

¶5            In response, the state maintained that Matlock violated the AMMA because § 36-2811(B)(3) only allows "patients . . . to offer or provide marijuana to another patient . . . if nothing of value is transferred in return."   It also asserted that the rule of lenity does not apply because the statute is unambiguous.

¶6            After hearing argument, the trial court issued its under-advisement ruling, granting Matlock's motion and dismissing the case against him.   The court determined that § 36-2811(B)(3) is ambiguous and that "there is no clear guidance from the rest of the AMMA of the exact . . . intent in this specific area."   The court also pointed out that "no one has truly analyzed" whether the rule of lenity applies, noting that the AMMA "exempts from punishment" and "is not truly 'penal.'"   However, the court ultimately applied the rule of lenity and concluded that § 36-2811(B)(3) "does not give a person of ordinary intelligence notice as to how it can be violated."   The state appealed.   We have jurisdiction pursuant to A.R.S. §§ 12-120.21(A)(1), 13-4031, and 13-4032(1).

**Discussion**

¶7            The state argues the trial court erred by granting Matlock's motion to dismiss because, under the AMMA, "patient sales of marijuana are not protected and may be prosecuted."   It relies on § 36-2811(B)(3), as well as other provisions of the AMMA.

---

to the instructions.  On remand, the grand jury returned an identical indictment.

Because this issue turns primarily on the interpretation of § 36-2811(B)(3), our review is de novo. *Mejak v. Granville*, 212 Ariz. 555, ¶ 7, 136 P.3d 874, 875 (2006); *see also State v. Malvern*, 192 Ariz. 154, ¶ 2, 962 P.2d 228, 229 (App. 1998).

¶8        In relevant part, § 36-2811(B) provides:

> A registered qualifying patient or registered designated caregiver is not subject to arrest, prosecution or penalty in any manner, or denial of any right or privilege, including any civil penalty or disciplinary action by a court or occupational or professional licensing board or bureau:
>
> . . . .
>
> 3.    For offering or providing marijuana to a registered qualifying patient or a registered designated caregiver for the registered qualifying patient's medical use or to a registered nonprofit medical marijuana dispensary if nothing of value is transferred in return and the person giving the marijuana does not knowingly cause the recipient to possess more than the allowable amount of marijuana.

This statute is part of the AMMA, which was passed by Arizona voters in 2010 as part of a ballot initiative. *State v. Gear*, 236 Ariz. 289, ¶ 3, 339 P.3d 1034, 1035 (App. 2014).

¶9        In *State v. Fields*, 232 Ariz. 265, ¶ 14, 304 P.3d 1088, 1092 (App. 2013), this court explained that registered qualifying patients under the AMMA "may be prosecuted for marijuana-related offenses" if they improperly transfer marijuana under § 36-2811(B).

This case requires us to determine whether a transfer between registered qualifying patients for something of value is improper.[2]

**¶10**        "Our primary objective in construing statutes adopted by initiative is to give effect to the intent of the electorate." *State v. Gomez*, 212 Ariz. 55, ¶ 11, 127 P.3d 873, 875 (2006). If a statute's language is clear and unambiguous, it is the best indicator of that intent, and we apply it as written without resorting to other methods of statutory interpretation. *Id.*; *State v. Siplivy*, 228 Ariz. 305, ¶ 6, 265 P.3d 1104, 1106 (App. 2011). However, if the language is ambiguous, we attempt to determine the electorate's intent by looking to the statutory scheme as a whole and considering the statute's context, historical background, effects and consequences, and purpose and spirit. *See State v. Ross*, 214 Ariz. 280, ¶ 22, 151 P.3d 1261, 1264 (App. 2007).

**¶11**        We begin our analysis by considering the language of § 36-2811(B)(3) to discern whether the electorate intended to allow patient-to-patient sales of marijuana under the AMMA.[3] *See Gomez*, 212 Ariz. 55, ¶ 11, 127 P.3d at 875; *Siplivy*, 228 Ariz. 305, ¶ 6, 265 P.3d at 1106. The parties present two different interpretations of § 36-2811(B)(3). The state acknowledges the statute provides that a "patient cannot be arrested or prosecuted for offering or providing marijuana to another patient or caregiver" but asserts that "there are two caveats." It contends "[n]o patient should exchange marijuana with another patient or caregiver for anything of value" and "no

_____

[2]Matlock devotes a considerable portion of his answering brief to arguing that § 36-2811(B)(3) is constitutional because "protecting patient-to-patient sales has a rational basis." However, we need not address this argument because the state has not challenged the constitutionality of § 36-2811(B)(3).

[3] Although Matlock requested a "$25 donation" for the marijuana plants, we characterize the exchange as a "sale," like the parties do, using that term in its broadest sense. *See Webster's Third New Int'l Dictionary* 2003 (1971) (defining "sale" as "transferring . . . ownership of property . . . to another for . . . a sum of money or any other consideration").

patient should knowingly give another patient or caregiver more marijuana than they are allowed to have under the [AMMA]."[4]

**¶12** In contrast, Matlock argues that "patient-to-patient transfers are permitted so long as the patient giving the marijuana does not knowingly cause the recipient patient to possess more than the allowable amount under the AMMA." He maintains that "[t]he prohibition of receipt of anything of value in return for marijuana is only attached to patient-to-dispensary transfers." He reasons that "if the conditional statement regarding 'nothing of value is transferred in return' was meant to apply to patient-to-patient and patient-to-caregiver transfers, then there would not be a second 'to' . . . preceding 'a registered nonprofit medical marijuana dispensary.'" *See State v. Arthur*, 125 Ariz. 153, 155, 608 P.2d 90, 92 (App. 1980) ("Whenever possible, a statute will be given such an effect that no clause, sentence, or word is rendered superfluous, void, contradictory or insignificant."). We disagree.

**¶13** The plain language of § 36-2811(B)(3) provides that a registered qualifying patient can offer or provide marijuana to another registered qualifying patient, a registered designated caregiver, or a registered nonprofit medical marijuana dispensary. In describing the recipients, the statute classifies patients and caregivers together because caregivers necessarily are receiving marijuana for a patient. *See* A.R.S. § 36-2801(5) (defining "[d]esignated caregiver"). The phrase "for the registered qualifying patient's medical use" applies to both patients and caregivers receiving marijuana. Thus, "to a registered qualifying patient or a registered designated caregiver" represents the first class in this series, and "to a registered nonprofit medical marijuana dispensary" is the second. The "to" preceding the "registered nonprofit medical

---

[4] "Two-and-one-half ounces of usable marijuana" is the "[a]llowable amount of marijuana" for a qualifying patient to possess under the AMMA. A.R.S. § 36-2801(1)(a)(i). If the qualifying patient is allowed to cultivate, he can also possess "twelve marijuana plants contained in an enclosed, locked facility." § 36-2801(1)(a)(ii).

marijuana dispensary" gives the two classes of recipients a parallel construction and is not superfluous.

**¶14** Section 36-2811(B)(3) further explains that, when offering or providing marijuana to those two classes, a registered qualifying patient cannot receive anything of value in return or knowingly cause the recipient to possess more than the allowable amount of marijuana. *Cf. Pawn 1st, L.L.C. v. City of Phx.*, 231 Ariz. 309, ¶ 18, 294 P.3d 147, 150 (App. 2013) ("'When there is a straightforward, parallel construction that involves all nouns or verbs in a series, a prepositive or postpositive modifier normally applies to the entire series.'"), *quoting* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts*, at 147 (2012).

**¶15** Notably, the dependent clause of § 36-2811(B)(3) beginning with the word "if" is essential to the meaning of the rest of the sentence. If the first part of the dependent clause — "if nothing of value is transferred in return" — applied only to dispensaries, as Matlock contends, and we removed that portion of the sentence, the remainder would not make sense:

> A registered qualifying patient or registered designated caregiver is not subject to arrest, prosecution or penalty in any manner, or denial of any right or privilege, including any civil penalty or disciplinary action by a court or occupational or professional licensing board or bureau:
>
> . . . .
>
> 3. For offering or providing marijuana to a registered qualifying patient or a registered designated caregiver for the registered qualifying patient's medical use or to a registered nonprofit medical marijuana dispensary . . . and the person giving the marijuana does not knowingly

cause the recipient to possess more than the
allowable amount of marijuana.

§ 36-2811(B)(3). Thus, based on the plain language of the statute, we conclude § 36-2811(B)(3) does not provide immunity from prosecution for a registered qualifying patient who provides marijuana to another registered qualifying patient in return for something of value.

**¶16**        Our conclusion is bolstered by the statutory scheme as a whole. *See State v. Wagstaff*, 161 Ariz. 66, 70, 775 P.2d 1130, 1134 (App. 1988) ("[S]tatutes should be explained in conjunction with other statutes to the end that they may be harmonious and consistent."). Of particular import, § 36-2811(E), (F) explicitly addresses the sale of marijuana. Those subsections provide immunity to registered nonprofit medical marijuana dispensaries and registered dispensary agents for "sell[ing] . . . marijuana . . . to registered qualifying patients." *Id.* The drafters of the statute—and the electorate that approved it—thus knew how to specify that a registered qualifying patient could not be prosecuted for selling marijuana to other such patients.

**¶17**        However, § 36-2811(B), which addresses registered qualifying patients' immunity, does not contain language similar to § 36-2811(E), (F) protecting them for selling marijuana to other registered qualifying patients. *Cf. Darrah v. McClennen*, 236 Ariz. 185, ¶ 6, 337 P.3d 550, 551-52 (App. 2014) ("If Arizona voters had intended to completely bar the State from prosecuting authorized marijuana users under [A.R.S.] § 28-1381(A)(3), they could have easily done so by using specific language to that effect.").

**¶18**        Matlock nevertheless relies on A.R.S. § 36-2815(C) in support of his argument that patient-to-patient sales are permitted. That statute provides: "Any cardholder who sells marijuana to a person who is not allowed to possess marijuana for medical purposes under this chapter shall have his registry identification card revoked, and shall be subject to other penalties for the

unauthorized sale of marijuana and other applicable offenses."[5] § 36-2815(C). Matlock asserts that if "no patient may ever sell marijuana to another patient, then this entire subsection of the statute would be rendered a nullity." *See Arthur*, 125 Ariz. at 155, 608 P.2d at 92 (we interpret statutes so no provision is rendered superfluous, void, contradictory, or insignificant). We disagree.

**¶19** Section 36-2815, titled "Revocation," details the penalties—revocation or criminal liability—that are available when the AMMA is violated. *See* § 36-2815(A) (agent's card revocation), (B) (dispensary's certificate revocation), (C)-(D) (cardholder's card revocation and "other penalties"). It further clarifies when those penalties are mandatory or discretionary. *Compare* § 36-2815(A), (B), (C) (using "shall"), *with* § 36-2815(D) (using "may" and "shall"). Section 36-2815(C) simply provides that cardholders who sell marijuana to those who are not allowed to possess it are subject to both card revocation and criminal liability. Merely because subsection (C) does not mention patient-to-patient sales does not mean such sales are permitted. [6] Different penalties apply depending on the circumstances and severity of the particular violation. And, contrary to Matlock's argument, the fact that § 36-2815(C) does not refer to patient-to-patient sales does not mean such transfers are implicitly authorized. Section 36-2815(D) provides that "[t]he department may revoke the registry identification card of any

---

[5]Under the AMMA, a cardholder is defined as "a qualifying patient, a designated caregiver or a nonprofit medical marijuana dispensary agent who has been issued and possesses a valid registry identification card." § 36-2801(2).

[6] The trial court similarly reasoned that, because a "cardholder" includes a qualifying patient, § 36-2815(C) "necessarily implies that a qualifying patient can sell marijuana." *See* § 36-2801(2). We disagree with this logic for the same reasons that we reject Matlock's argument. Section 36-2815(C) provides consequences for any cardholder—qualifying patient, designated caregiver, or dispensary agent—who sells marijuana to someone who is not allowed to possess it; the statute does not suggest that patient-to-patient sales of marijuana are therefore permitted.

cardholder who knowingly violates this chapter, and the cardholder shall be subject to other penalties for the applicable offense."

¶20      Matlock maintains the purpose and spirit of the AMMA support his interpretation of § 36-2811(B)(3). To the contrary, these secondary canons of statutory interpretation, even if we were required to apply them, support our conclusion that patient-to-patient sales are not permitted. The AMMA's purpose is "to protect patients with debilitating medical conditions, as well as their physicians and providers, from arrest and prosecution, criminal and other penalties and property forfeiture if such patients engage in the medical use of marijuana." Arizona Publicity Pamphlet, Ballot Propositions & Judicial Performance Review 73 (2010); *see also Heath v. Kiger*, 217 Ariz. 492, ¶ 13, 176 P.3d 690, 694 (2008) ("To determine the intent of the electorate, courts may also look to the publicity pamphlet distributed at the time of the election."). To that end, the electorate "required" the Arizona Department of Health Services "to adopt and enforce a regulatory system for the distribution of marijuana for medical use." Arizona Publicity Pamphlet, *supra*, at 83. The sale of medical marijuana only through closely regulated dispensaries is consistent with that purpose. *Cf.* A.R.S. §§ 36-2806.02 (directions for dispensary agents before distributing marijuana), 36-2807 (verification system for use by dispensary agents, law enforcement, and employers).

¶21      Also consistent with its purpose, the AMMA evinces a spirit of permitting patients to acquire the medicine they need, not creating a profitable medical marijuana industry. The AMMA makes clear that medical marijuana dispensaries must be "not-for-profit" and can only receive payment for "expenses incurred in [their] operation." § 36-2801(11). Similarly, designated caregivers "may not be paid any fee or compensation" for their services but can only be reimbursed their "actual costs." § 36-2801(5)(e). Allowing registered qualifying patients to provide marijuana in exchange for something of value would therefore be the exception. And, allowing such patient-to-patient transactions would, as the state points out, create an "incentive to embark on a sales enterprise."

¶22      In sum, we conclude the electorate did not intend to provide immunity from prosecution to a registered qualifying

patient who offers or provides marijuana to another registered qualifying patient in exchange for something of value.[7]  *See* § 36-2811(B)(3).  The trial court therefore erred by granting Matlock's motion to dismiss.  *See Mejak*, 212 Ariz. 555, ¶ 7, 136 P.3d at 875; *Malvern*, 192 Ariz. 154, ¶ 2, 962 P.2d at 229.

## Disposition

**¶23**          For the foregoing reasons, we reverse the trial court's ruling dismissing the criminal case against Matlock and remand the case for further proceedings.

---

[7] Because we have reached this conclusion based on our canons of statutory interpretation, we need not determine whether the rule of lenity applies to the AMMA.  *See State v. Sanchez*, 209 Ariz. 66, ¶ 6, 97 P.3d 891, 893 (App. 2004) (rule of lenity applied only when ambiguity remains after applying other rules of statutory interpretation).