IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

---

**STATE OF ARIZONA,**
*Appellant,*

*v.*

**ROBERT GEAR,**
*Appellee.*

---

No. CR-14-0408-PR
Filed May 6, 2016

---

Appeal from the Superior Court in Navajo County
The Honorable Ralph E. Hatch, Judge
No. CR-2013-00089
**REVERSED AND REMANDED**

Opinion of the Court of Appeals, Division One
236 Ariz. 289, 339 P.3d 1034 (App. 2014)
**VACATED**

---

COUNSEL:

Brad Carlyon, Navajo County Attorney, Galen H. Wilkes (argued), Deputy
Navajo County Attorney, Holbrook, Attorneys for State of Arizona

Kimberly A. Kent (argued), Kent Law Group, PLLC, Phoenix, Attorney for
Robert Gear

William G. Montgomery, Maricopa County Attorney, Bruce P. White,
Joseph J. Branco, and Diane Meloche, Deputy County Attorneys, Phoenix,
Attorneys for Amicus Curiae Maricopa County Attorney

Mark Brnovich, Arizona Attorney General, John R. Lopez IV (argued),
Solicitor General, Maria M. Syms, Assistant Attorney General, Phoenix,
Attorneys for Amicus Curiae Arizona Attorney General Mark Brnovich

———————

JUSTICE BOLICK authored the opinion of the Court, in which CHIEF JUSTICE BALES, VICE CHIEF JUSTICE PELANDER, and JUSTICES BRUTINEL and TIMMER joined.

———————

JUSTICE BOLICK, opinion of the Court:

¶1        This case presents the question of whether the Arizona Medical Marijuana Act ("AMMA" or "the Act") immunizes a physician against prosecution for falsely attesting that he reviewed a patient's medical records from the previous twelve months before providing a written certification authorizing medical marijuana use. We hold that AMMA does not grant such immunity.

## I. BACKGROUND

### A.  Arizona Medical Marijuana Act

¶2        Arizona voters enacted AMMA, A.R.S. § 36–2801, *et seq.*, by ballot initiative in 2010 (Proposition 203). The Act provides that a "qualifying patient" diagnosed with a "debilitating medical condition" may obtain a registry card from the Arizona Department of Health Services ("DHS"), and thereby obtain immunity from prosecution for the acquisition, possession, and use of medical marijuana under the statutory conditions. *See* A.R.S. §§ 36–2801(3), (13), –2804.02, –2811(B).

¶3        To register with DHS, a qualified patient must first obtain a physician's "written certification," which AMMA defines as:

> a document dated and signed by a physician, stating that in the physician's professional opinion the patient is likely to receive therapeutic or palliative benefit from the medical use of marijuana to treat or alleviate the patient's debilitating medical condition or symptoms associated with the debilitating medical condition. The physician must:
> (a)     Specify the qualifying patient's debilitating medical condition in the written certification.

(b)     Sign and date the written certification only in the course of a physician-patient relationship after the physician has completed a full assessment of the qualifying patient's medical history.

A.R.S. § 36-2801(18).    AMMA does not define "physician-patient relationship" or "full assessment of the qualifying patient's medical history."

¶4          Physicians are immunized from prosecution for providing written certifications under AMMA.  At issue here is § 36–2811(C), which provides:

A physician shall not be subject to arrest, prosecution or penalty in any manner or denied any right or privilege, including but not limited to civil penalty or disciplinary action by the Arizona board of medical examiners or by any other business, occupational or professional licensing board or bureau, based solely on providing written certifications or for otherwise stating that, in the physician's professional opinion, a patient is likely to receive therapeutic or palliative benefit from the medical use of marijuana to treat or alleviate the patient's debilitating medical condition or symptoms associated with the debilitating medical condition, but nothing in this chapter prevents a professional licensing board from sanctioning a physician for failing to properly evaluate a patient's medical condition or otherwise violating the standard of care for evaluating medical conditions.

A.R.S. § 36-2811(C).

¶5          In addition to immunizing certain individuals against prosecution or punishment in the medical marijuana context, "the electorate 'required' [DHS] 'to adopt and enforce a regulatory system for the distribution of marijuana for medical use.'" *State v. Matlock*, 237 Ariz. 331, 336 ¶ 20, 350 P.3d 835, 840 (App. 2015) (quoting Proposition 203 ballot pamphlet).  Section 36–2803 gives DHS certain rulemaking authority, including the power under § 36-2803(A)(2) of "[e]stablishing the form and

3

content of registration and renewal applications submitted under this chapter." By regulation, DHS specified what is required to perform a "full assessment of the qualifying patient's medical history," including reviewing the patient's "medical records from other treating physicians from the previous 12 months." Ariz. Admin. Code R9–17–202(F)(5)(i)(i). The regulation also requires the physician to attest to the truth and accuracy of the information set forth in the written certification. *Id.* at R9-17-202(F)(5)(m).

## B. Facts and Procedural History

¶6         On September 1, 2012, a Navajo County drug task force confidential informant ("C.I."), in connection with an undercover investigation of an alleged illicit medical marijuana cooperative, visited Dr. Robert Gear to obtain a written certification for medical marijuana. The C.I. completed a questionnaire and medical records statement. On the latter form, she indicated that she had visited other physicians within the past twelve months but did not "have a complete set of medical records with [her]." The C.I. agreed to furnish the records to Dr. Gear no later than her next visit.

¶7         Following a medical examination, Dr. Gear certified the C.I. for medical marijuana use. Despite never reviewing her medical records from the preceding twelve months, he indicated on the written certification that he had done so. He also attested that "the information provided in the written certification is true and correct."

¶8         A grand jury indicted Dr. Gear on one count of forgery under A.R.S. § 13–2002 and one count of fraudulent schemes and artifices under § 13–2310. The trial court dismissed the indictment, ruling that § 36–2811(C) immunizes Dr. Gear against prosecution on those charges. The court of appeals affirmed. *State v. Gear*, 236 Ariz. 289, 339 P.3d 1034 (App. 2014).

¶9         We granted review because the scope of AMMA's physician immunity under § 36-2811(C) presents a recurring issue of statewide importance. We have jurisdiction under article 6, section 5(3) of the Arizona Constitution and A.R.S. § 12-120.24.

## II.  DISCUSSION

¶10        We begin by noting two issues that are not before us.  First, the parties have not addressed whether the DHS requirement that a physician review twelve months of prior physician records before certifying a patient for medical marijuana falls within the prescribed scope of the agency's regulatory authority under AMMA.  Second, we do not address the propriety of the undercover investigation that resulted in Dr. Gear's indictment.

¶11        Rather, the sole question before this Court is whether AMMA immunizes the alleged false statements Dr. Gear made in his certification. We review questions of statutory interpretation de novo and construe ballot measures to effect the voters' intent.  *Reed-Kaliher v. Hoggatt*, 237 Ariz. 119, 122 ¶ 6, 347 P.3d 136, 139 (2015).  AMMA's "purpose . . . is to protect patients with debilitating medical conditions, as well as their physicians and providers, from arrest and prosecution, criminal and other penalties and property forfeiture if such patients engage in the medical use of marijuana."  Prop. 203, § 2(G), Ariz. Sec'y of State, 2010 Publicity Pamphlet 83, *available at* http://apps.azsos.gov/election/2010/Info/PubPamphlet/English/Prop2 03.htm.

¶12        Both the State and Dr. Gear urge constructions that do not find support in the Act's language or intent.  The State argues that physician immunity extends only to "providing" written certifications, and not "preparing" them.  The State's constricted reading of the word "providing," however, would render the immunity almost meaningless, as a physician could be prosecuted for each step short of delivering the certification to the patient.

¶13        Dr. Gear argues that physician immunity extends to any conduct "related to certification."  Such a sweeping application of immunity could lead to troublesome outcomes that would be difficult to square with the intent or language of the Act.  For instance, would immunity extend to theft or sexual assault committed in the course of a physical examination conducted during the certification process?  Dr.

Gear's interpretation is foreclosed by the Act's language, which in relevant part provides immunity from prosecution "based solely on providing written certifications." A.R.S. § 36-2811(C).

¶14 Dr. Gear does not point to any language or voter intent indicating that AMMA is meant to immunize individuals against prosecution for other crimes they may commit that are related to or arise from the protected activity. As discussed below, the use of the word "solely" expresses the intent to shield from criminal prosecution only the provision of medical marijuana certifications and professional opinions, not other conduct that might expose the physician to adverse consequences, even if that conduct is related to providing a written certification or expressing a professional opinion.

¶15 In interpreting § 36-2811(C), the court of appeals did not consider the qualifier "solely," but instead noted that the statute grants immunity for "providing written certification *or for otherwise stating* that, in the physician's professional opinion, a patient is likely to receive" benefit from medical marijuana. *Gear*, 236 Ariz. at 292 ¶ 11, 339 P.3d at 1037 (quoting A.R.S. § 36-2811(C)). This language immunizes two different though related types of actions: "providing written certification" and "otherwise stating" the physician's medical judgment. By applying the term "solely," the immunity is limited to those two actions and excludes from immunity any act that goes beyond those actions, even if it is related to them. Here the prosecution is not directed toward immunized conduct but is instead based on Dr. Gear falsely attesting that he inspected medical records that he did not, in fact, review.

¶16 If, as here, the criminal charges are not based "solely" on protected conduct—where they are directed not toward the medical judgment or the certification itself but to an act of dishonesty—then they are not shielded from prosecution or punishment by the Act's plain language. "Solely," both in ordinary usage[1] and as a legal term of art, is a highly restrictive term that consistently has been interpreted, including in the context of medical marijuana decisions, to strictly limit the scope of the

---

[1] Solely is defined as "singly" or "alone." *See* Webster's Third New International Dictionary 2168 (2002).

legal protection or proscription that follows.

¶17    In *Dobson v. McClennen*, 238 Ariz. 389, 361 P.3d 374 (2015), this Court affirmed the conviction of a defendant charged with driving with an impermissible drug or metabolite in her body.  The defendant argued that AMMA immunized her as a medical marijuana cardholder from prosecution for driving under the influence (DUI).  The Court recognized that "AMMA broadly immunizes [cardholders] from prosecution for using medical marijuana consistent with the Act."  *Id.* at 390 ¶ 1, 361 P.3d at 375.  At the same time, Arizona criminal statutes prohibit, among other things, driving while there is any specified drug, including cannabis or its metabolite, in the person's body.  *Id.* at ¶ 2, 361 P.3d at 375.  As here, the case presented the interplay between criminal statutes and medical marijuana immunity.

¶18    *Dobson* is not a perfect analogy because AMMA specifically provides that the state is not prohibited from prosecuting individuals for operating a motor vehicle while under the influence of marijuana.  *See* A.R.S. § 36–2802(D).  But central to the Court's analysis in *Dobson* was the language of the statutory immunity, which provides that "a registered qualifying patient shall not be considered to be under the influence of marijuana *solely* because of the presence of metabolites or components of marijuana that appear in insufficient concentration to cause impairment." 238 Ariz. at 391 ¶ 9, 361 P.3d at 376 (emphasis added) (quoting A.R.S. § 36-2802(D)).  The Court found unconvincing the argument that such language, qualified by the term "solely," provides absolute immunity against DUI charges.  *Id.* at 392 ¶ 15, 361 P.3d at 377.  Rather, the Court held, "When read together, the statutory provisions suggest that the AMMA gives qualifying patients a limited defense rather than a general immunity" in the context of DUI prosecutions, *id.* at ¶ 17, 361 P.3d at 377, allowing defendants to demonstrate that the concentrations of marijuana were insufficient to cause impairment.  *Id.* at 393 ¶ 21, 361 P.3d at 378 ("The risk of uncertainty in this regard should fall upon the patients, who generally know or should know if they are impaired and can control when they drive, rather than on the members of the public whom they encounter on our streets.").

¶19    Similar reasoning applies here.  Dr. Gear is not being prosecuted for providing a written certification but for lying about

compliance with rules issued by DHS, whose authority Dr. Gear does not contest. Given the restrictive effect of the term "solely," we do not impute intent on the part of the voters to immunize physicians against crimes such as forgery or fraudulent schemes. Holding otherwise would expose Arizonans, including medical marijuana cardholders themselves, to harmful conduct that we should not lightly infer that the voters sought to immunize. "When two statutes conflict, we adopt a construction that reconciles them whenever possible, giving force and meaning to each." *State v. Jones*, 235 Ariz. 501, 502 ¶ 6, 334 P.3d 191, 192 (2014). Our interpretation here preserves both AMMA's broad physician immunity and the criminal statutes under which Dr. Gear was charged.

¶20 Courts in California, whose medical marijuana laws predate Arizona's, likewise have narrowly construed immunity from prosecution when limited by the statutory adjective "sole." In *People v. Mentch*, 195 P.3d 1061 (Cal. 2008), the California Supreme Court construed an immunity provided to primary caregivers in the medical marijuana context. One of the questions before the court was whether a provision that immunized such individuals against prosecution for assisting in administering, advising, or counseling in the administration or cultivation of medical marijuana "on that sole basis" would preclude prosecution of such individuals for marijuana cultivation or possession. *Id.* at 1072. The court held that the words "on that sole basis" did not mean that the defendant "could not be charged with cultivation or possession for sale on *any* basis; to the extent that he went beyond the immunized range of conduct, i.e., administration, advice, and counseling, he would, once again, subject himself to the full force of the criminal law." *Id.* at 1073. Other California decisions also have narrowly construed the scope of the state's medical marijuana laws when qualified by the term "sole basis" in the public nuisance context. *See City of Riverside v. Inland Empire Patients Health & Wellness Ctr., Inc.*, 300 P.3d 494 (Cal. 2013) (rejecting the argument that medical marijuana laws preempt local ban on dispensaries); *Kirby v. Cty. of Fresno*, 242 Cal. App. 4th 940 (2015) (concluding that the medical marijuana laws did not preempt city's ability to regulate the cultivation of marijuana). Here, too, Dr. Gear "went beyond the immunized range of conduct" — providing written certifications or expressing professional opinions — to falsely avow that he had reviewed certain medical records. As a result, he subjected himself to the full force of criminal prosecution — not for his

professional medical opinions, which are protected, but for his false misrepresentation of fact, which is not.

¶21    We are not convinced by Dr. Gear's argument that affording immunity here is supported by § 36–2811(C)'s statement that "nothing in this chapter prevents a professional licensing board from sanctioning a physician for failing to properly evaluate a patient's medical condition or otherwise violating the standard of care for evaluating medical conditions." That a physician may be professionally disciplined for malpractice in connection with certifying a patient for medical marijuana use does not, either by the statutory terms or logically, suggest that such discipline is the only sanction for making false statements in a certification.

¶22    Nor are we persuaded that allowing the prosecution to proceed "would have a chilling effect on the voluntary participation of physicians, and, thereby, hinder qualifying patients' efforts to obtain competent medical advice regarding medical marijuana, its medical risks, and its alleged therapeutic and palliative benefits." *Gear*, 236 Ariz. at 294 ¶ 21, 339 P.3d at 1039. Nothing in our opinion should be read to limit or threaten such protected activities. *Cf. Reed-Kaliher*, 237 Ariz. at 122 ¶ 7, 347 P.3d at 139 (protecting the AMMA rights of probationers). Physicians are trained and relied upon to be scrupulous. The import of a false attestation is obvious. The boundaries between law enforcement and protected physician activities were fixed when the voters forbade prosecution and punishment based "solely" upon the specified protected activities.

¶23    In sum, AMMA immunizes physicians from prosecution or penalties based solely on their providing the statutorily authorized certifications or otherwise stating a professional opinion regarding the therapeutic and palliative benefits of medical marijuana use. It does not immunize other conduct, such as making a false statement in a written certification.

## III. CONCLUSION

¶24    For the foregoing reasons, we vacate the opinion of the court of appeals, we reverse the trial court's order of dismissal, and remand the case to the trial court for further proceedings consistent with this decision.