386 P.3d 416

**WHITE MOUNTAIN HEALTH CENTER, INC., an Arizona non-profit corporation, Plaintiff/Appellee,**

v.

**MARICOPA COUNTY; William Montgomery, Esq., Maricopa County Attorney, Defendants/Appellants,**

**State of Arizona ex rel. Mark Brnovich,[1] in his official capacity as Attorney General, Intervenor/Appellant.**

Nos. 1 CA–CV 12–0831
1 CA–CV 13–0697, 1 CA–CV
14–0372 (Consolidated)

Court of Appeals of Arizona,
Division 1.

FILED 12/20/2016

the sale occurs or the person directed to sell, finally refuses to sell the premises . . . ").

1. Pursuant to ARCAP 27(c)(2), Arizona Attorney General Mark Brnovich is substituted for former Arizona Attorney General Thomas C. Horne. The caption above should be used for all further proceedings in this matter.

White Berberian PLC, Tempe, By Steven M. White, Anne M. Brady, Co–Counsel for Plaintiff/Appellee

ACLU Criminal Law Reform Project, New York, NY, By Ezekiel R. Edwards, Emma A. Andersson, Co–Counsel for Plaintiff/Appellee, Pro Hac Vice

ACLU Foundation of Arizona, Phoenix, By Daniel Joseph Pochoda, Co–Counsel for Plaintiff/Appellee

Maricopa County Attorney's Office, Phoenix, By Thomas P. Liddy, Bruce P. White, Joseph I. Vigil, Counsel for Defendants/Appellants Maricopa County, William Montgomery

Arizona Attorney General's Office, Phoenix, By Charles A. Grube, Brian P. Luse, Counsel for Intervenor/Appellant State of Arizona

Yavapai County Attorney's Office, Prescott, By Benjamin D. Kreutzberg, Counsel for Amicus Curiae Yavapai County Attorney

Kercsmar & Feltus PLLC, Scottsdale, By Todd Feltus, Counsel for Amicus Curiae Judicial Watch, Inc.

Presiding Judge Donn Kessler delivered the opinion of the Court, in which Judge Peter B. Swann and Chief Judge Michael J. Brown joined.

## OPINION

KESSLER, Presiding Judge:

¶ 1 In 2012, White Mountain Health Center, Inc. ("White Mountain") sought county zoning approval to establish a medical marijuana dispensary ("MMD") pursuant to the Arizona Medical Marijuana Act ("AMMA"), Arizona Revised Statutes ("A.R.S.") sections 36–2801 to –2819 (2014 and Supp. 2015).[2] Maricopa County refused to issue the necessary zoning documents and White Mountain

---

**2.** We cite the current version of applicable statutes when no revisions material to our opinion have occurred.

filed suit. These three consolidated appeals followed. In the first appeal (1 CA–CV 12–0831, the "Preemption Appeal"), Appellants [3] seek reversal of the superior court's partial summary judgment for White Mountain and denial of the Appellants' motions for summary judgment, in which the court held that the Controlled Substances Act ("CSA"), 21 U.S.C. §§ 801 to 971 (West 2016), does not preempt the AMMA. In the second appeal (1 CA–CV 13–0697, the "Zoning Appeal"), the County challenges the summary judgment in favor of White Mountain, in which the court struck the Maricopa County Zoning Ordinance ("MCZO") "Second Text Amendment" [4] as it applied to MMDs. In the third appeal (1 CA–CV 14–0372, the "Attorneys' Fees Appeal"), the County seeks to reverse the court's $5000 sanction against the County pursuant to A.R.S. § 12–349 (2016).

¶ 2 For the reasons that follow, we affirm the superior court's rulings except the sanctions imposed against the County. First, the CSA does not preempt the AMMA to the extent the AMMA requires the County to pass reasonable zoning regulations for MMDs and process papers concerning zoning compliance or requires the State to issue documents to allow MMDs to operate. Second, the court did not exceed its authority in striking the Second Text Amendment to the extent the amendment applied to MMDs. Finally, we reverse the award of $5000 in sanctions against the County because the County did not unreasonably expand or delay the proceedings or defend a claim without substantial justification.

### FACTUAL AND PROCEDURAL HISTORY

#### I. Background

#### A. AMMA and Regulations

¶ 3 In 2010, Arizona voters passed Proposition 203, now codified as the AMMA. Ariz. Sec'y of State, State of Arizona Official Canvass at 15 (2010); *State v. Okun*, 231 Ariz. 462, 464, ¶ 4, 296 P.3d 998 (App. 2013). The AMMA decriminalizes and provides protections against discrimination under state law for the medical use and possession, cultivation, and sale of marijuana under the circumstances described in the AMMA. *See, e.g.,* A.R.S. §§ 36–2802, –2811, –2813, –2814; *see also* Ariz. Sec'y of State, Ballot Proposition Guide at § 2(D), (G) (2010). The AMMA granted the Arizona Department of Health Services ("ADHS") rulemaking authority to promulgate regulations in order to implement and administer the AMMA. A.R.S. §§ 36–136(F) (Supp. 2012), –2803. Those regulations are found in the Arizona Administrative Code ("A.A.C.") at sections R9–17–101 to R9–17–323.[5] No party challenges the validity or construction of the ADHS regulations.

¶ 4 The AMMA also empowers ADHS to establish the system to register MMDs throughout the state and track compliance with statutory requirements. A.R.S. § 36–2803. To this end, ADHS may approve at least one MMD per county, but no more than one MMD for every ten pharmacies in an area. A.R.S. § 36–2804(C). The AMMA also authorizes cities, towns, and counties to "enact reasonable zoning regulations that limit the use of land for [MMDs] to specified areas in the manner provided in title 9, chapter 4, article 6.1, and title 11, chapter 6, article 2." A.R.S. § 36–2806.01 (internal citations omitted).

¶ 5 Both the AMMA and ADHS regulations require an entity seeking to become an MMD to first register with ADHS by filing an application for a "registration certificate." A.R.S. § 36–2804; A.A.C. R9–17–304. The application must include, among other things, "a sworn statement certifying" that the MMD is in compliance with zoning restrictions "[i]f the city, town or county ... has enacted zoning restrictions." A.R.S. § 36–2804(B)(1)(d). ADHS regulations also require that an application must include "[d]ocumen-

---

**3.** The Appellants are Maricopa County and the Maricopa County Attorney, William Montgomery, in his official capacity (collectively, the "County"), and Intervenor/Appellant State of Arizona ex rel. Arizona Attorney General Mark Brnovich (the "State").

**4.** *See infra* ¶ 9.

**5.** We refer to the regulations in effect in June 2012. The current regulations, which were amended December 2012, do not affect resolution of these appeals.

tation from the local jurisdiction where the [MMD]'s proposed physical address is located [stating] that: a. There are no local zoning restrictions for the [MMD's] location, or b. The [MMD's] location is in compliance with any local zoning restrictions." A.A.C. R9–17–304(C)(6).

¶ 6 Once the application for a registration certificate is filed, ADHS must review and allocate the certificates pursuant to A.A.C. R9–17–303. If ADHS allocates a registration certificate to an applicant and the applicant is compliant with the regulations, ADHS shall issue the applicant a certificate. A.A.C. R9–17–107(F)(1), (2). Only upon ADHS' allocation and issuance of a registration certificate may a proposed MMD apply to operate an MMD. *See* A.A.C. R9–17–305(A).[6]

### B. CHAA system

¶ 7 To allocate MMD certificates, ADHS utilizes the preexisting Community Health Analysis Areas ("CHAA") system. A.A.C. R9–17–101(7). Arizona contains 126 CHAAs, and some CHAAs are in overlapping local jurisdictions such as cities and unincorporated portions of counties. The parties stipulated that nothing explicitly requires an MMD in every CHAA.

### C. MCZO

¶ 8 The MCZO is a permissive zoning ordinance, such that if a particular land use is not explicitly permitted, it is prohibited. In response to the AMMA, the County amended the MCZO in 2010 to create a special use category that permitted MMDs in certain commercially-zoned districts (the "First Text Amendment"). The First Text Amendment also contained a "poison pill" provision instructing: "[t]his provision shall not be construed as permitting any use or act which is otherwise prohibited by law."

¶ 9 The Maricopa County Attorney publicly opposed the AMMA, opined that county employees who processed applications for MMDs could be subject to federal prosecution, and advised the County to stop accepting applications for MMDs in unincorporated Maricopa County. The County amended the MCZO again in 2011 (the "Second Text Amendment"). The Second Text Amendment only permitted MMDs in Industrial 3 ("IND–3") zones in unincorporated Maricopa County, precluded special use permits for MMDs, and contained a slightly different poison pill provision. The new provision specified that, as to IND–3 zones, a "building or premise shall be used only for industrial use not in conflict with any federal law, state law or Maricopa County Ordinance." Although IND–3 zoning existed in unincorporated Maricopa County, CHAA 49[7] did not contain any IND–3 zones.[8]

## II. White Mountain's Complaint

¶ 10 In May 2012, White Mountain applied for a registration certificate for CHAA 49. In response, ADHS issued a "Notice of Deficiencies" because White Mountain had not submitted the necessary zoning documentation from the County confirming that either no local zoning restrictions existed or that White Mountain was in compliance with applicable restrictions. *See* A.A.C. R9–17–107(G)(4), R9–17–304(C)(6). White Mountain was the only applicant for a registration certificate in CHAA 49. As the State stipulated and the superior court found, ADHS would have issued the registration certificate to White Mountain but for the lack of necessary zoning documentation from the County.

¶ 11 White Mountain filed a complaint in superior court against the County, ADHS, and its Director in his official capacity,[9] alleging that White Mountain could not obtain the

---

**6.** Among other things, A.A.C. R9–17–305 requires the entity applying to operate an MMD to provide "documentation issued by the local jurisdiction ... authorizing occupancy of the building as [an MMD]" and a sworn statement by the proposed MMD's principal officers and board members "certifying that the [MMD] is in compliance with local zoning restrictions."

**7.** CHAA 49 is located in Sun City and is entirely within unincorporated portions of Maricopa County.

**8.** The parties stipulated in the superior court that the existence of the CHAA system is irrelevant to zoning.

**9.** Former ADHS Director Will Humble has been replaced by Dr. Cara Christ.

necessary zoning documentation because the County refused to issue it. The State stipulated that "the only deficiency in [White Mountain's] application [was] the lack of documentation from Maricopa County." White Mountain attached to its complaint a copy of a letter from the Maricopa County Attorney's Office that stated:

> [T]he County is not issuing zoning verification for [MMDs] due to the fact that doing so would potentially subject the County and its employees to prosecution under federal law.... the County will not be accepting any further applications for [MMDs] or cultivation sites, further processing any pending applications, or issuing any certificates, permits or other authorizations or justification for [MMDs] or cultivation sites until the threat of federal prosecution is conclusively removed.

¶ 12 White Mountain sought declaratory relief regarding its compliance and/or need to comply with the zoning verification requirement. In Count 1, White Mountain sought a declaration that: (1) there were no local or county zoning restrictions for MMDs in CHAA 49; (2) the County had not enacted "reasonable" restrictions; or (3) White Mountain had complied with all requirements for obtaining an MMD registration certificate. In its answer, the County "admit[ted] that Maricopa County and its employees [would] not take any action that would be in violation of federal law."

¶ 13 In Count 2, White Mountain sought injunctive relief to prevent ADHS from withdrawing its application for a registration certificate due to the lack of required documentation from the County. Finally, in Count 3, White Mountain sought mandamus relief to order: (1) the County to provide the necessary documentation stating that there were either no zoning restrictions or that White Mountain was in compliance; and (2) ADHS to issue a registration certificate to White Mountain.

### III. The Preliminary Injunction

¶ 14 In response to White Mountain's request for injunctive relief, the superior court entered a preliminary injunction enjoining ADHS from withdrawing or denying White Mountain's application based on White Mountain's failure to provide the zoning verification. The State did not seek appellate relief from the injunction. *See* A.R.S. § 12–2101(A)(5)(b) (2016) (authorizing an appeal from the grant or denial of injunctive relief).

### IV. Motions for Summary Judgment

#### A. Federal Preemption

¶ 15 White Mountain then moved for partial summary judgment seeking, among other things, a court order directing the County to issue the zoning documentation.[10] The County filed a cross-motion for summary judgment, asserting "the relief sought [was] preempted by the laws of the United States" and that the court could not order declaratory relief to "compel" a public lawyer, here the Maricopa County Attorney, to give a "certain legal opinion." It maintained that a mandatory injunction requiring compliance with the AMMA "would require county employees to subject themselves to the risk of criminal prosecution by the United States" and specifically that County employees "could be held liable as aiders or abettors" under the CSA. Ultimately, the County argued that (1) because the County and its employees could not comply with both the AMMA and the CSA, the relief sought was preempted ("impossibility preemption"); and (2) the AMMA was preempted because it created an obstacle to enforcement of the CSA ("obstacle preemption").[11]

¶ 16 The State intervened, counterclaimed for declaratory relief, and moved for sum-

10. White Mountain also sought mandamus and/or declaratory relief that: (1) it had complied with the MCZO; (2) the MCZO did not contain any restrictions on MMDs; (3) the MCZO did not contain reasonable restrictions; (4) in the alternative, that the only reasonable zoning restrictions were C–2 and C–3 zones and limitations on the exact location of MMDs close to schools and other facilities; (5) White Mountain had complied with all statutory and regulatory requirements for the issuance of a registration certificate; and (6) ADHS issue the registration certificate.

11. We further discuss impossibility and obstacle preemption *infra* ¶34.

mary judgment, arguing White Mountain's requested relief was preempted by the CSA. It asserted all relevant provisions of the AMMA authorizing the running of MMDs were barred by obstacle preemption.

¶ 17 The parties agreed the CSA neither expressly preempts state law nor occupies the whole field. The superior court determined neither obstacle preemption nor impossibility preemption applied, but the court limited relief to simply ordering the County to issue zoning documentation stating that either no relevant zoning requirements existed or White Mountain had complied with them. The court entered a final signed judgment pursuant to Arizona Rule of Civil Procedure 54(b), granting White Mountain's motion for partial summary judgment and mandamus relief, denying Appellants' cross-motions for summary judgment, and denying the State's counterclaim for declaratory relief. Thereafter the County filed a document with the court that indicated the County's compliance with the court's mandamus order. However, on the form it provided to White Mountain to submit to ADHS, rather than checking either box on the ADHS form indicating White Mountain was in compliance with the local zoning regulations or that no such zoning existed, the County responded by indicating "N/A" for each option. The County and the State timely filed separate notices of appeal from the 54(b) judgment, thus beginning the Preemption Appeal.

## B. Declaratory Relief and the Second and Third Text Amendments

¶ 18 While the Preemption Appeal was pending, and after the County's execution of the ADHS zoning form indicating that neither the compliance nor absence of zoning restrictions applied, White Mountain and the County moved for summary judgment on the Second Text Amendment. White Mountain argued the Second Text Amendment violated the AMMA by effectively banning MMDs from CHAA 49, and generally because of the poison pill provision. The County argued the Second Text Amendment was a valid legislative act, the AMMA did not preempt local regulation with respect to land use for MMDs, and permitted uses in particular zoning districts must be consistent county-wide.

¶ 19 In granting White Mountain's motion and denying the County's motion, the superior court recognized its duty to give broad deference to the County when the County's zoning powers were challenged, but it noted that a county could not use its zoning powers to violate state law. It observed that when state law and a zoning ordinance conflict and the two cannot be harmonized, state law controls. The court declared the Second Text Amendment unreasonable and void because it violated the AMMA both by (1) prohibiting MMDs under the poison pill provision and (2) limiting MMDs to IND–3 districts although no IND–3 district existed in CHAA 49. As the court summarized, a "County zoning ordinance that poses a categorical prohibition of Medical Marijuana violates" the AMMA, which grants local jurisdictions only the limited power to enact "reasonable zoning regulations that limit the land for [MMDs] to specified areas...."

¶ 20 The superior court then ordered supplemental briefing on the effect of striking the Second Text Amendment. White Mountain argued that by striking the Second Text Amendment, the First Text Amendment would be automatically reinstated or revived, or alternatively, that all MMD zoning restrictions would be eliminated from the MCZO. The County argued that because the MCZO is a permissive ordinance, that is, unless a use is permitted it is prohibited, and none of the zones other than IND–3 permits MMDs, MMDs are prohibited in those other zones. It also argued that the striking of the Second Text Amendment could not revive or automatically renew the First Text Amendment. According to the County, this resulted in the rest of the Second Text Amendment staying in place and thus, MMDs were prohibited because they were not listed as permitted uses and such a result would not violate the AMMA.

¶ 21 The superior court held that the doctrine of automatic revival would not revive the First Text Amendment, but it also held that after striking the Second Text Amendment, no zoning restrictions for MMDs in unincorporated Maricopa County existed be-

yond limitations within the AMMA regarding locations near schools. The court concluded White Mountain "ha[d] otherwise fully complied with local zoning restrictions, because there [were] none," and ordered ADHS to process White Mountain's application for a registration certificate. It further enjoined ADHS from denying the application based on White Mountain's failure to provide evidence of compliance with zoning ordinances because, again, "there [were] none." The court later amended that judgment to provide that it had only struck the Second Text Amendment as it specifically applied to MMDs. The County and the State timely appealed, starting the Zoning Appeal.

¶ 22 In response to the superior court's judgment that the Second Text Amendment was void, the County amended the MCZO again (the "Third Text Amendment"). The Third Text Amendment restricted MMDs to Commercial 2 and 3 ("C–2," "C–3") and IND–1, –2, and –3 zoning districts. The poison pill provision from the First Text Amendment, directing that the "provision shall not be construed as permitting any use ... otherwise prohibited or made punishable by law," remained in the Third Text Amendment. Additionally, the County provided that in the event the superior court's ruling on the Second Text Amendment was overturned, the Third Text Amendment would no longer be effective and the MCZO would revert back to the Second Text Amendment.

## V. Attorneys' Fees, Costs, and Sanctions

¶ 23 White Mountain sought attorneys' fees and costs from the County. The superior court awarded White Mountain $190,000 in fees, $3700.02 in costs, and $5000 in sanctions against the County pursuant to A.R.S. § 12–349. The court found that White Mountain was entitled to sanctions pursuant to A.R.S. § 12–349 because the County unreasonably expanded and delayed the proceedings and because the court's earlier ruling on preemption, adverse to the County, rendered the County's opposition to the requested relief "without substantial justification."

¶ 24 The County timely appealed, starting the Attorneys' Fees Appeal. We consolidated the three appeals, and we have jurisdiction to resolve the appeals from each of the final judgments pursuant to A.R.S. §§ 12–120.21 (2016) and –2101(A)(1) (2016).

## DISCUSSION

### I. Preemption Appeal

¶ 25 In the Preemption Appeal, Appellants contend the CSA preempts all provisions of the AMMA. However, the only issue raised in the superior court, and the only issue we will address, is whether the actions the AMMA required the State and the County to take in this case—for the County, approving zoning for specific areas for MMDs, processing zoning documents, and taking action pursuant to zoning laws to ensure MMDs meet other zoning requirements, and for the State, processing White Mountain's application to operate an MMD—are impliedly preempted because such relief allegedly conflicts with the CSA. *See County of San Diego v. San Diego NORML*, 165 Cal.App.4th 798, 815–18, 81 Cal.Rptr.3d 461 (2008) (stating county lacks standing to raise constitutional infirmities of state medical marijuana laws except to the extent the laws require it to take specific action).

¶ 26 The State argues the court erred by requiring it to process White Mountain's applications because such relief thwarts federal public policy and "Arizona courts are bound to deny injunctive aid to unlawful marijuana businesses." The County argues the court erred by: (1) requiring it to issue zoning verification documents required by A.A.C. R9–17–304(C)(6) because such relief is preempted by the CSA; and (2) not dismissing the complaint to the extent the complaint sought an order challenging the Maricopa County Attorney's advice to the County, because he was "performing a discretionary role in providing legal advice to the County.... [and] mandamus relief does not lie to challenge his advice to his public client." For the following reasons, we conclude the relief ordered consistent with the AMMA is not preempted by the CSA and the County's preemption argument based on possible criminal prosecution for issuing the zoning

documentation is legally insufficient if not moot.[12]

▮ ¶ 27 Two amicus briefs were filed in support of preemption, neither of which we address. The first, from amicus Judicial Watch, Inc., largely repeats Appellants' arguments regarding preemption but adds that the AMMA is in direct conflict with the CSA and unidentified treaty obligations of the United States. The Arizona Supreme Court rejected the direct conflict argument in *Reed–Kaliher v. Hoggatt*, 237 Ariz. 119, 124, ¶¶ 19–21, 347 P.3d 136 (2015). We are bound by that decision. *Sell v. Gama*, 231 Ariz. 323, 330, ¶ 31, 295 P.3d 421 (2013) ("The lower courts are bound by our decisions, and this Court alone is responsible for modifying that precedent."). Moreover, the parties did not brief or contend in the superior court that there was express preemption or a violation of treaty rights, and we will not consider such arguments raised by an amicus for the first time on appeal, especially in light of the amicus' failure to identify any specific treaty obligations allegedly preempting the AMMA. *See Fendler v. Phx. Newspapers Inc.*, 130 Ariz. 475, 478 n.2, 636 P.2d 1257, 1260 n.2 (App. 1981) ("On appeal from summary judgment this court will not consider new theories raised in order to secure reversal of the lower court's determination."); *see also Ness v. W. Sec. Life Ins. Co.*, 174 Ariz. 497, 502–03, 851 P.2d 122, 127–28 (App. 1992) (clarifying that an argument without citations to legal authority is insufficient to preserve an issue on appeal). Additionally, amici cannot raise issues not raised below or by the parties. *Ruiz v. Hull*, 191 Ariz. 441, 446, ¶ 15, 957 P.2d 984 (1998).

▮ ¶ 28 The second amicus brief, from the Yavapai County Attorney, argues the AMMA is preempted by the federal scheme for medicine delivery governed by the federal Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. § 801 *et seq.*, which includes the CSA and the Food, Drug, and Cosmetic Act, 21 U.S.C. § 301 *et seq. See Gonzales v. Raich*, 545 U.S. 1, 12 n.19, 125 S.Ct. 2195, 162 L.Ed.2d 1 (2005). However,

because the parties did not litigate and the superior court did not address the Comprehensive Drug Abuse Prevention and Control Act or the Food, Drug, and Cosmetic Act, we will not consider them on appeal. *Fendler*, 130 Ariz. at 478 n.2, 636 P.2d 1257; *Ruiz*, 191 Ariz. at 446, ¶ 15, 957 P.2d 984. Similarly, we will not address the County's argument that *Reed–Kaliher* should be modified or overruled because the County failed to raise the argument in the trial court, *Fendler*, 130 Ariz. at 478 n.2, 636 P.2d 1257, and only the supreme court may modify supreme court precedent, *Sell*, 231 Ariz. at 330, ¶ 31, 295 P.3d 421.

## A. Standard of Review and Burdens of Proof

▮ ¶ 29 Although we defer to the superior court's factual findings and review grants of injunctive and mandamus relief for an abuse of discretion, the rest of our review is *de novo. Flying Diamond Airpark, LLC v. Meienberg*, 215 Ariz. 44, 47, ¶ 9, 156 P.3d 1149 (App. 2007) (injunctive relief); *Forszt v. Rodriguez*, 212 Ariz. 263, 265, ¶ 9, 130 P.3d 538 (App. 2006) (mandamus relief); *Hill v. Peterson*, 201 Ariz. 363, 365, ¶ 5, 35 P.3d 417 (App. 2001) (noting federal preemption is a question of law); *State v. Mathis*, 231 Ariz. 103, 109, ¶¶ 17, 19, 290 P.3d 1226 (App. 2012) (reviewing the superior court's interpretation of statutes and whether summary judgment was warranted *de novo*).

▮ ¶ 30 Appellants bear a heavy burden to show preemption. "Statutes are presumed constitutional and the burden of proof is on the opponent of the statute to show it infringes upon a constitutional guarantee or violates a constitutional principle." *State v. Wagstaff*, 164 Ariz. 485, 494, 794 P.2d 118, 127 (1990); *see US W. Commc'ns, Inc. v. Ariz. Corp. Comm'n*, 201 Ariz. 242, 246, ¶ 23, 34 P.3d 351 (2001) (stating that whenever possible, we construe Arizona law "to avoid conflict with the United States Constitution and federal statutes"). Similarly, "[t]he party claiming preemption bears the burden of demonstrating that federal law preempts

---

**12.** During oral argument on appeal, both White Mountain and the County averred that White Mountain had opened its MMD in CHAA 49. We

understand that to mean that ADHS took all necessary actions to process and approve White Mountain's application.

state law," and "must overcome the assumption that a federal law does not supersede the historic police powers of the states." *E. Vanguard Forex, Ltd. v. Ariz. Corp. Comm'n*, 206 Ariz. 399, 405, ¶ 18, 79 P.3d 86 (App. 2003) (internal quotation marks and citation omitted); *see Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 449, 125 S.Ct. 1788, 161 L.Ed.2d 687 (2005) (noting that when two plausible readings of a statute are possible, "we would nevertheless have a duty to accept the reading that disfavors pre-emption").

## B. General Preemption Principles

■ ¶ 31 State and federal governments have "elements of sovereignty the other is bound to respect," *Arizona v. United States*, 567 U.S. 387, 132 S.Ct. 2492, 2500, 183 L.Ed.2d 351 (2012), and states have "vast residual powers" reserved by the Tenth Amendment to the United States Constitution, *State v. Barragan–Sierra*, 219 Ariz. 276, 286, ¶ 30, 196 P.3d 879 (2008) (quoting *United States v. Locke*, 529 U.S. 89, 109, 120 S.Ct. 1135, 146 L.Ed.2d 69 (2000)). One of these is the states' historical police power to provide for the health, safety, and welfare of their citizens, including the power to define criminal offenses and sanctions, prosecute crimes, and regulate land use and medical practices. *See, e.g., Gonzales v. Oregon*, 546 U.S. 243, 270, 126 S.Ct. 904, 163 L.Ed.2d 748 (2006) (regulating medical practices); *United States v. Lopez*, 514 U.S. 549, 561 n.3, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995) (defining and enforcing criminal law); *Barnes v. Glen Theatre*, 501 U.S. 560, 569, 111 S.Ct. 2456, 115 L.Ed.2d 504 (1991) (stating public indecency statutes are a legitimate use of police power); *Qualified Patients Ass'n v. City of Anaheim*, 187 Cal.App.4th 734, 757, 115 Cal.Rptr.3d 89 (2010) ("[R]egulation of medical practices and state criminal sanctions for drug possession are historically matters of state police power . . . .").

■ ¶ 32 Of course, "[f]rom the existence of two sovereigns follows the possibility that laws can be in conflict or at cross-purposes." *Arizona*, 132 S.Ct. at 2500. In such a case, the Supremacy Clause[13] provides that federal law prevails because "state action cannot circumscribe Congress' plenary commerce power." *Raich*, 545 U.S. at 29, 125 S.Ct. 2195; *see Arizona*, 132 S.Ct. at 2500. Thus, "the States possess sovereignty concurrent with that of the Federal Government, subject only to limitations imposed by the Supremacy Clause." *Tafflin v. Levitt*, 493 U.S. 455, 458, 110 S.Ct. 792, 107 L.Ed.2d 887 (1990); *see Barragan–Sierra*, 219 Ariz. at 286, ¶ 30, 196 P.3d 879 (explaining that "unless constrained or displaced" states' powers "are often exercised in concurrence with those of the National Government") (internal quotation marks and citation omitted). In line with principles of federalism, the states' police powers "are not superseded unless that was the clear and manifest purpose of Congress." *Reed–Kaliher*, 237 Ariz. at 124, ¶ 19, 347 P.3d 136 (internal quotation marks and citations omitted); *see also CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 664, 113 S.Ct. 1732, 123 L.Ed.2d 387 (1993) (stating court will be reluctant to find preemption when interpreting a federal statute pertaining to a subject traditionally governed by state law). Indeed, federalism is one of the beauties of the American system of government, permitting states to act as laboratories of democracy consistent with the Tenth Amendment and the Supremacy Clause. *New State Ice Co. v. Liebmann*, 285 U.S. 262, 311, 52 S.Ct. 371, 76 L.Ed. 747 (1932) (Brandeis, J., dissenting) ("It is one of the happy incidents of the federal system that a single courageous state may, if its citizens choose, serve as a laboratory; and try novel social and economic experiments without risk to the rest of the country."); *see also Bond v. United States*, 564 U.S. 211, 221, 131 S.Ct. 2355, 180 L.Ed.2d 269 (2011) (holding that deference to state lawmaking "allows local policies more sensitive to the diverse needs of a heterogeneous society, permits innovation and experimentation, enables greater citizen involvement in democratic processes, and makes government more responsive by putting the States in competition for a mobile citizenry") (citations and internal quotation marks omitted).

■ ¶ 33 In general, federal preemption is conceptualized as either express or

---

**13.** U.S. Const. art. VI, cl. 2.

implied. *See Arizona*, 132 S.Ct. at 2500–01. Express preemption occurs when Congress explicitly defines the extent of preemption. *Mich. Canners & Freezers Ass'n, Inc. v. Agric. Mktg. & Bargaining Bd.*, 467 U.S. 461, 469, 104 S.Ct. 2518, 81 L.Ed.2d 399 (1984). Implied preemption occurs by: (1) federal occupation of the field ("field preemption"); or (2) a conflict between the state and federal law that either (a) creates an obstacle to federal law ("obstacle preemption"), or (b) makes it physically impossible to comply with both state and federal law ("impossibility preemption"). *Arizona*, 132 S.Ct. at 2500–01; *see also Reed–Kaliher*, 237 Ariz. at 124, ¶ 19, 347 P.3d 136.

¶ 34 As an initial matter, Appellants do not and cannot successfully argue that Congress expressly preempted all state drug law or occupied the entire field by enacting the CSA. As our supreme court noted in *Reed–Kaliher*, Congress "specified that the CSA does not expressly preempt state drug laws or exclusively govern the field." 237 Ariz. at 124, ¶ 20, 347 P.3d 136. The CSA states: "No provision of this subchapter shall be construed as indicating an intent on the part of the Congress to occupy the field ... unless there is a *positive conflict*" between a provision of the CSA and "State law so that the two *cannot consistently stand together*." 21 U.S.C. § 903 (emphases added); *see also Oregon*, 546 U.S. at 251, 126 S.Ct. 904 ("The CSA explicitly contemplates a role for the States in regulating controlled substances, as evidenced by its pre-emption provision."). Thus, express preemption and field preemption do not apply. Instead, Appellants argue that conflict preemption applies; the State contends the CSA preempts the AMMA using obstacle analysis, and the County uses both obstacle and impossibility analyses.

### C. Conflict Preemption

#### 1. Obstacle Preemption

##### i. *Reed–Kaliher*

■ ¶ 35 We gain substantial guidance from our supreme court's recent decision, *Reed–Kaliher v. Hoggatt*. Reed–Kaliher was an AMMA patient who sought amendment of a probation condition banning marijuana use or possession "for any reason." *Id.* at 121, ¶ 4 347 P.3d 136. He asserted the AMMA protected him from "arrest, prosecution or penalty in any manner, or denial of any right or privilege ... [f]or ... medical use of marijuana pursuant to [AMMA]." *Id.* The State claimed the CSA preempted the AMMA under conflict analysis, but the court rejected its argument, pointedly holding there was "no such conflict here." *Id.* at 141, ¶ 19 347 P.3d 136. Relying on *Ter Beek v. City of Wyoming*, 495 Mich. 1, 846 N.W.2d 531, 536–41 (2014), the court explained that the AMMA does not prevent the United States from enforcing federal law, but instead provides a limited state-law immunity. *Reed–Kaliher*, 237 Ariz. at 124, ¶ 22, 347 P.3d 136. As such, the AMMA does not stand as an obstacle to the CSA. State law conflicts with federal law on obstacle preemption only if the purpose of the federal law cannot otherwise be accomplished. *Id.* As the court explained:

> The state-law immunity AMMA provides does not frustrate the CSA's goal of conquering drug abuse or controlling drug traffic ... the people of Arizona chose to part ways with Congress only regarding the scope of acceptable medical use of marijuana. Possession and use of marijuana not in compliance with AMMA remain illegal under Arizona law.

*Id.* at 124–25, ¶ 23, 347 P.3d 136 (internal quotation marks and citations omitted).[14] The court also reasoned that by not including a prohibition of AMMA-compliant marijuana use as a condition of probation, the superior court would not be "authorizing or sanctioning a violation of federal law, but rather would be recognizing that the court's authority to impose probation conditions is limited by statute." *Id.* at 141, ¶ 21 347 P.3d 136 . Finally, the court explained that state officials were not being compelled to violate their oath of office by being required to permit medical marijuana use consistent with the AMMA. *Id.* at 125, ¶ 24 347 P.3d 136.

---

**14.** *Reed–Kaliher* also noted that Congress cannot compel states to enact or enforce a federal regulatory program, and the CSA does not require Arizona to enforce federal law. 237 Ariz. at 123–24, ¶ 18, 347 P.3d 136.

Rather, all state officers and employees swore to support Arizona statutes and both the Arizona and federal constitutions, including the Supremacy Clause. *Id.* Because federal law does not require state judges to prohibit probationers from AMMA-sanctioned marijuana use and the AMMA permits such use, no violation occurs by permitting use as a term of probation. *Id.*

¶ 36 In light of *Reed–Kaliher*, we conclude Appellants have not met their burden to show the AMMA is preempted by the CSA under conflict analyses.[15] In supplemental briefs, Appellants attempt to distinguish *Reed–Kaliher* from this case, arguing: (1) *Reed–Kaliher* does not address the same federal preemption issue or conclusively determine the outcome here because it is limited to its facts; and (2) the AMMA requires the State and County to "affirmatively authorize" violations of the CSA, unlike in *Reed–Kaliher*.[16]

¶ 37 We disagree with Appellants' argument that *Reed–Kaliher* is limited to its facts for several reasons. First, in applying *Reed–Kaliher*, we must look to what was "central to the [supreme court's] analysis" when interpreting precedent. *State v. Gear*, 239 Ariz. 343, 346, ¶ 18, 372 P.3d 287 (2016). The rationale of *Reed–Kaliher* applies to this situation as well as to probationary terms prohibiting use of medical marijuana under the AMMA. The essence of *Reed–Kaliher* is that Arizona voters' approval of medical marijuana under

a regulated state law system in no way conflicts as an obstacle with federal enforcement of the CSA. As the court explained, nothing in the AMMA precludes the United States from enforcing the CSA; the AMMA "chose to part ways with congress only regarding the scope of acceptable medical use of marijuana. Possession and use of marijuana not in compliance with AMMA remain illegal under Arizona law." *Reed–Kaliher*, 237 Ariz. at 124–25, ¶ 23, 347 P.3d 136 (internal quotation marks and citations omitted). The federal government is free to enforce the CSA in Arizona and cannot require the state to enforce the CSA. *Id.* at 123–24, ¶ 18 347 P.3d 136 .

¶ 38 Second, although *Reed–Kaliher* addresses the immunity clause of the AMMA, the court found the preemption analysis in *Ter Beek* persuasive and *Ter Beek*'s facts are similar to the facts at hand. *See id.* at 122–25, ¶¶ 7–9, 22–23, 347 P.3d 136. *Ter Beek* involved Michigan's medical marijuana act and a local ordinance that, like the MCZO, provided that uses "not expressly permitted ... [were] prohibited in all districts," and that "uses that [were] contrary to federal law, state law or local ordinance [were] prohibited." 846 N.W.2d at 533–34. Ter Beek was a qualifying patient under Michigan's medical marijuana act who wanted to grow and use medical marijuana pursuant to section 4(a) of that act. *Id.* at 534.[17] He contended that the

15. The United States Supreme Court recently denied leave to file a bill of complaint in *Nebraska v. Colorado*, — U.S. —, 136 S.Ct. 1034, 194 L.Ed.2d 545 (2016). In the complaint, Nebraska and Oklahoma had sought to challenge portions of Colorado's recreational marijuana laws as being preempted by the CSA. *Id.* at 1036 (Thomas, J. and Alito, J., dissenting); *cf. Smith v. Hickenlooper*, 164 F.Supp.3d 1286, 1290–92 (D. Colo. 2016) (dismissing for lack of standing private actions to hold Colorado's recreational marijuana laws preempted under the CSA and other federal laws and treaties).

16. White Mountain argues the issue of federal preemption is moot because the superior court's rulings have permitted White Mountain to proceed and, White Mountain is therefore no longer seeking mandamus relief and Appellants no longer have standing to assert the affirmative defense of preemption. We will, of course, strive to avoid constitutional issues if the appeal can be resolved on other grounds. *See Fragoso v. Fell*, 210 Ariz.

427, 430, ¶ 6, 111 P.3d 1027 (App. 2005) (explaining that courts should avoid constitutional issues "when other principles of law are controlling and the case can be decided without ruling on the constitutional questions"). Given the nature of the State's and County's arguments about alleged preemption of the AMMA, however, we cannot in good conscience conclude that the preemption argument is moot simply because White Mountain is currently operating to distribute medical marijuana in conformity with the AMMA.

17. Section 4(a) of the Michigan act provided, in relevant part, that: "A qualifying patient who has been issued and possesses a registry identification card shall not be subject to arrest, prosecution, or penalty in any manner, or denied any right or privilege, including but not limited to civil penalty or disciplinary action by a business or occupational or professional licensing board or bureau, for the medical use of marihuana in

local ordinance violated section 4(a) of the act because it subjected him to punishment for conduct permitted by the act. *Id.* at 534–35. The city argued in part that the act was preempted by the CSA. *Id.* The Michigan Supreme Court held that the local ordinance was invalid under the act and that the act was not preempted by the CSA. *Id.* at 540–41. Specifically, the court determined no obstacle preemption occurred because: (1) the immunity state law provided did not alter, interfere with, or undermine federal enforcement of the CSA; and (2) the CSA expressly recognized a role for the states in regulating drugs by expressly declining to occupy the field. *Id.* The court concluded that it failed to see how state law providing immunity from state penalties for medical use of marijuana, which would include sale and transfer of such product compliant with state law, would result in "significant and unsolvable obstacles to the enforcement" of the CSA. *Id.* Thus, although *Reed–Kaliher* took place in a probation context, the facts of *Ter Beek* are similar enough to this case to defeat Appellants' argument that *Reed–Kaliher* was limited to a probation violation context. The AMMA's provisions at issue here, like the provisions at issue in *Ter Beek*, do not amount to "significant and unsolvable obstacles to the enforcement" of the CSA. *See also United States v. Walsh*, 654 Fed.Appx. 689, 696 (6th Cir. 2016) (affirming federal convictions of violations of the CSA for manufacturing medical marijuana and holding that compliance with state medical marijuana statutes did not create a defense to a breach of the CSA); *Joe Hemp's First Hemp Bank v. City of Oakland*, No. C 15–05053 WHA, 2016 WL 375082, at *3 (N.D. Cal. Feb. 1, 2016) (holding that city's permit ordinances regulating distribution of medical marijuana were not preempted by the CSA because they did not create an obstacle to federal enforcement of the CSA and merely regulated traffic in controlled substances to a lesser degree than state criminal laws).

¶ 39 We also find support for our conclusion from *County of San Diego v. San Diego NORML*, 165 Cal.App.4th 798, 815–18, 81 Cal.Rptr.3d 461 (2008). In *San Diego*

*NORML*, various California counties challenged the state's medical marijuana program. *Id.* at 808, 81 Cal.Rptr.3d 461. They argued in part that the CSA preempted the program because the program required them to issue identification cards identifying the person as authorized to possess, transport, deliver, or cultivate marijuana under California's medical marijuana laws. *Id.* at 808–11, 81 Cal.Rptr.3d 461. The court rejected that argument, first concluding that preemption under 21 U.S.C. § 903 of the CSA was limited to positive conflicts between the CSA and state law, meaning impossibility preemption rather than obstacle preemption. *Id.* at 821–25, 81 Cal.Rptr.3d 461. Alternatively, the court reasoned that even if obstacle preemption applied to the identification card provisions, the cards did not pose a significant obstacle to specific federal objectives under the CSA. *Id.* at 826–27, 81 Cal.Rptr.3d 461. Instead, the cards merely allowed qualified citizens to obtain identification that would facilitate protection from prosecution under state law. *Id.* at 827, 81 Cal.Rptr.3d 461. The court also rejected the counties' impossibility preemption argument, concluding the program only required counties to process applications for the cards and the CSA was silent by not banning such cards. *Id.* at 825–26, 81 Cal.Rptr.3d 461.

### ii. Authorization Versus Decriminalization

¶ 40 Appellants argue *Reed–Kaliher* is distinguishable because the AMMA requires the State and County to "affirmatively authorize" violations of the CSA rather than merely decriminalizing them. Although the State maintains that "[i]dentifying a person who is not subject to arrest or prosecution under state law is certainly within the State's power to decriminalize activities for purposes of its own laws," it cites four provisions of the AMMA to support its argument that the AMMA "expressly authorizes" activities that violate the criminal enforcement provisions in the CSA. Similarly, the County argues the AMMA goes "beyond mere decriminalization" to "affirmatively authorize" violations of the CSA.

accordance with this act." *Ter Beek*, 846 N.W.2d at 535.

¶ 41 We disagree with Appellants. As we understand the Appellants' arguments, if the AMMA had merely decriminalized the manufacture, distribution, and sale of medical marijuana, the AMMA would not be preempted by the CSA any more than decriminalization of growth and possession for personal use would have been preempted. However, because the State decided to regulate MMDs, that *regulation* is preempted. The logic of that distinction escapes us.

¶ 42 We also fail to see a principled basis for the State's distinction between Arizona's identification system to determine whether a patient is exempt from criminal sanction (i.e., for possession) and its system to determine whether an MMD is exempt (i.e., for possession and distribution). The State does not explain why any arguable differences in registering MMDs and patients under Arizona law somehow amount to authorizing federal crimes in one instance but not the other. Appellants have not shown that the AMMA or portions thereof go "beyond decriminalization," or that authorization/decriminalization is even a valid distinction for purposes of Arizona law. However, even assuming the validity of the distinction and its applicability here, Appellants have not shown how the AMMA creates "significant and unsolvable obstacles to the enforcement" of the CSA. *See Ter Beek*, 846 N.W.2d at 538–39.

¶ 43 Additionally, the AMMA provisions Appellants cite are not implicated by the facts or context of this case. *See* A.R.S. §§ 36–2806(E)–(F), –2806.02. Only one cited provision actually uses the word "authorize," and that provision pertains to patient and caregiver identification cards. *See* A.R.S. §§ 36–2804.04(A)(7) ("Registry identification cards for qualifying patients and designated caregivers shall contain ... [a] clear indication of whether the cardholder has been *authorized* by this chapter to cultivate ... for the qualifying patient's medical use.") (emphasis added), –2804.04(C)(7) (ADHS must inform a patient of MMD locations if the patient's or designated caregiver's identification card "does not state that the cardholder is *authorized* to cultivate marijuana....").

¶ 44 We are unpersuaded by the State's argument based on this "authorization" language. The language that is purportedly fatal to the AMMA's enforcement appears in a section regarding patient and caregiver identification cards—an issue that the State itself maintains does not implicate the CSA because such provisions "merely serve to identify those individuals for whom the possession or use of marijuana has been authorized" under Arizona law, and are therefore "not 'authorizations' to violate federal law."

¶ 45 Appellants' argument relies on *Emerald Steel Fabricators, Inc. v. Bureau of Labor and Industries*, 348 Or. 159, 230 P.3d 518 (2010), but this reliance is misplaced.[18] In

**18.** The County also relies on *Pack v. Superior Court*, 199 Cal.App.4th 1070, 132 Cal.Rptr.3d 633 (2011). However, the California Supreme Court dismissed the petition for review as moot, *Pack v. S.C.*, 146 Cal.Rptr.3d 271, 283 P.3d 1159 (2012), thus making the court of appeal's decision unpublished pursuant to California Rule of Court 8.528(b)(3). As such, the California Court of Appeal's decision is not citable in Arizona because it is not citable in California. Cal. Rule of Court 8.1115(a); Ariz. R. Sup. Ct. 111(d).

Appellants also cite *Gonzales v. Raich*, 545 U.S. 1, 125 S.Ct. 2195, 162 L.Ed.2d 1 (2005) and *United States v. Oakland Cannabis Buyers' Cooperative*, 532 U.S. 483, 121 S.Ct. 1711, 149 L.Ed.2d 722 (2001), to support their preemption arguments. The State limits its reliance on these cases to note that the CSA regulatory scheme is a closed regulatory system and there is no medical necessity exemption for marijuana. The County argues that under the two cases, the CSA prohibits the manufacture, distribution, dispensation, and possession of marijuana even if permitted for medical uses under state law, and such a prohi-

bition is properly within Congress' authority under the Commerce Clause.

Neither case affects our preemption analysis. *Raich* addressed whether the CSA's criminalization of marijuana, including prohibition of local cultivation and use of marijuana in compliance with California law, was constitutional under the Commerce Clause, not whether state laws permitting medical marijuana were preempted by the CSA. 545 U.S. at 5, 15, 125 S.Ct. 2195; *City of Garden Grove v. Superior Court*, 157 Cal. App.4th 355, 381–83, 68 Cal.Rptr.3d 656 (2007) (clarifying that the sole issue presented in *Raich* was constitutionality of the CSA under the Commerce Clause and not preemption of state medical marijuana laws). Indeed, the only possible discussion of preemption in *Raich* was a general comment discussing the Supremacy Clause and stating that state authorization of medical marijuana cannot limit Congressional authority to criminalize marijuana. 545 U.S. at 29, 125 S.Ct. 2195. *Oakland* reversed a lower court ruling that held a medical necessity for use of marijuana

*Emerald Steel,* the Oregon Supreme Court held that the CSA preempted Oregon's medical marijuana act insofar as it authorized marijuana use by a patient in violation of the CSA. *Id.* at 528–29. By construing the terms "may engage" and "authorized to engage" in the Oregon medical marijuana act,[19] the court determined the Oregon act affirmatively authorized marijuana use in violation of the CSA and was thus preempted. *Id.* at 525, 525–26 nn.11–12.

¶ 46 We fail to see how *Emerald Steel* supports Appellants' positions. The ultimate question is whether the AMMA creates an obstacle so that the CSA cannot otherwise be enforced, *Reed–Kaliher,* 237 Ariz. at 124, ¶ 22, 347 P.3d 136, that is, whether the AMMA's requirement that the State and County process MMD applications and permit MMDs under zoning ordinances creates "significant and unsolvable obstacles to the enforcement" of the CSA, *Ter Beek,* 846 N.W.2d at 539. We fail to see how having a state regulatory scheme to permit MMD operation consistent with the AMMA creates significant and unsolvable obstacles to the enforcement of the CSA. See *Garcia v. Tractor Supply Co.,* 154 F.Supp.3d 1225, 1229–30 (D. N.M. 2016) (noting that cases holding state medical marijuana laws are not preempted by the CSA for exempting persons from prosecution under state law are distinguishable from *Emerald Steel,* which dealt with interpretation of state discrimination laws *requiring* employers to accommodate use of medical marijuana under state law).

¶ 47 We also decline to adopt *Emerald Steel* 's distinction between decriminalization and authorization of medical marijuana use. The authorization/decriminalization distinction itself seems to be primarily semantic and ultimately results in a circular analysis. See *Emerald Steel,* 230 P.3d at 538–39 (Walters, J., dissenting) (stating the state medical mar-

ijuana act's words of authorization "serve only to make operable the exceptions to and exemptions from state prosecution ... [and] do not grant permission that would not exist if those words were eliminated or replaced with words of exception or exclusion"). As stated by the dissent in *Emerald Steel,* even if the state law "did not use words of permission, [it] would permit, for purposes of [state] law, the conduct that it does not punish." *Id.* at 539. Indeed, the AMMA's decriminalization of patients' production, possession, and use of marijuana within the terms of the AMMA is no less an authorization to produce, possess, and use marijuana than authorizing MMDs to operate by producing, possessing, and selling marijuana within the terms of the AMMA. Authorization, in this context, is merely another term for the absence of penalties or criminal sanctions under state law. See *Reed–Kaliher,* 237 Ariz. at 124, ¶ 21, 347 P.3d 136 (holding that by permitting an AMMA-compliant marijuana use for probationers, a court would "not be authorizing or sanctioning a violation of federal law, but rather would be recognizing that the court's authority to impose probation conditions is limited by statute.").

¶ 48 Finally, the State argues A.R.S. § 36–2811(B)–(G) provides protection from arrest and prosecution for AMMA activities that exceed state authority. It asserts "[t]hese provisions do not limit the prohibition to state tribunals ... [and] the State cannot stop federal officers or courts from enforcing federal law." We find this argument unpersuasive. Not only are these provisions not at issue in this case, but we read them to be limited to prosecution under state law, particularly since the AMMA does not otherwise purport to shield anyone or any act from federal prosecution. We have a duty to construe our statutes "to avoid conflict with the United States Constitution and federal stat-

---

authorized under state law was a defense to federal enforcement of the CSA. 532 U.S. at 486–89, 494–95, 121 S.Ct. 1711. These cases addressed attacks on CSA enforcement by the federal government, not preemption of state laws authorizing medical marijuana use.

**19.** The two provisions at issue stated that: "A person who possesses a registry identification

card ... *may engage* in ... the medical use of marijuana...." O.R.S. § 475.306 (West. 2003) (emphasis added); and defined "registry identification card" as "a document ... that identifies a person *authorized* to engage in the medical use of marijuana...." O.R.S. § 475.302(9) (West. 2003) (emphasis added).

utes." *US W. Commc'ns*, 201 Ariz. at 246, ¶ 23, 34 P.3d 351. In addition, "when two plausible readings of a statute are possible, we would nevertheless have a duty to accept the reading that disfavors preemption." *Bates*, 544 U.S. at 449, 125 S.Ct. 1788. Arizona, like all other states, has the power to decriminalize certain acts and exempt certain actors for purposes of state law. *See Reed–Kaliher*, 237 Ariz. at 124–25, ¶¶ 22–23, 347 P.3d 136 (clarifying the people of Arizona "chose to part ways with Congress only regarding the scope of acceptable medical use of marijuana"); *Okun*, 231 Ariz. at 465, ¶ 9, 296 P.3d 998 (stating that by approving the AMMA, Arizona voters decided to decriminalize possession of an allowable amount of marijuana); *City of Garden Grove v. Superior Court*, 157 Cal.App.4th 355, 388–89, 68 Cal.Rptr.3d 656 (2007) (determining state law required return of property to medical marijuana user and was not preempted by the CSA).

### 2. Impossibility Analysis

 ¶ 49 In addition to Appellants' other conflict preemption arguments, the County argues the CSA preempts the AMMA using an impossibility analysis. The County asserts it is impossible to comply with both the CSA and the AMMA, and that by issuing the necessary zoning documents pursuant to the AMMA, County officials might face criminal prosecution for aiding and abetting MMDs' violations of the CSA. We find this argument unpersuasive for several reasons.

¶ 50 First, *Reed–Kaliher* rejected a similar argument as it applied to state court judges. The court held that by permitting an AMMA-compliant marijuana use for probationers, a court would "not be authorizing or sanctioning a violation of federal law, but rather would be recognizing that the court's authority to impose probation conditions is limited by statute." 237 Ariz. at 124, ¶ 21, 347 P.3d 136. Similarly, the County by issuing zoning documents would "not be authorizing or sanctioning a violation of federal law," but rather would be recognizing that the County had a duty to issue such documents by statute. Furthermore, the court also held that by allowing use of medical marijuana consistent

with the AMMA as part of probation, state officers or employees, including prosecutors, would not violate their oath of office to "support the Constitution of the United States and the Constitution and laws of the State of Arizona" because

> nothing in federal law purports to require state judges to include a prohibition on the use of medical marijuana pursuant to AMMA as a condition of probation. Because AMMA prohibits such a condition and federal law does not require it, a state judge does not violate the oath of office by omitting such a condition.

*Id.* at 125, ¶ 24 347 P.3d 136 . This impliedly rejects an impossibility argument because the CSA does not expressly prohibit a county official from abiding by the AMMA in issuing zoning documents, and the state law requires such conduct.

¶ 51 Second, we cannot accept the County's aiding and abetting argument. 18 U.S.C. § 2 (West 2016) provides that:

> (a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

> (b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

However, the CSA provides that subject to exceptions relating to search warrants,

> no civil or criminal liability shall be imposed by virtue of this subchapter upon any duly authorized Federal officer lawfully engaged in the enforcement of this subchapter, *or upon any duly authorized officer of any State ... who shall be lawfully engaged in the enforcement of any law or municipal ordinance relating to controlled substances.*

21 U.S.C. § 885(d) (West 2016) (emphasis added). Our supreme court found that § 885(d) provides immunity from federal prosecution to sheriffs who follow court orders to return medical marijuana to lawful possessors. *Okun*, 231 Ariz. at 465–66, ¶¶ 13–14, 296 P.3d 998 (citing 21 U.S.C. § 885(d)). Although the County contends that such a statute is limited to law enforcement person-

nel, the Ninth Circuit Court of Appeals has held that state or local officials who enforce state medical marijuana statutes are entitled to immunity under that provision. *United States v. Rosenthal*, 454 F.3d 943, 948 (9th Cir. 2006) (contrasting law enforcement officials, who "compel[led] compliance" with state law by vindicating appellant's "state-law right to [the marijuana's] return" and were therefore engaged in "enforcement," with marijuana distribution center operator, who, although appointed by city and encouraged to distribute medical marijuana under state law, was not engaged in "enforcement" because state law did not provide any person with a right to obtain medical marijuana). Here, County officials are "engaged in the enforcement" of state statutes by processing applications for the zoning permits and promulgating reasonable regulations to permit MMDs pursuant to state law.

¶ 52 Additionally, to prove aiding and abetting under federal law, "it is necessary that a defendant in some sort associate himself with the venture, that he participate in it as in something that he wishes to bring about, that he seek by his action to make it succeed." *Nye & Nissen v. United States*, 336 U.S. 613, 619, 69 S.Ct. 766, 93 L.Ed. 919 (1949) (internal quotation marks and citations omitted); *see also Conant v. Walters*, 309 F.3d 629, 635 (9th Cir. 2002). As the California Court of Appeal held in *Garden Grove*, state law enforcement officials acting pursuant to state law in returning medical marijuana to a person authorized by state law to possess it cannot be liable for violating the CSA as aiders and abettors. 157 Cal.App.4th at 368, 68 Cal.Rptr.3d 656. This is because to aid and abet, a person "must associate himself with the venture and participate in it as in something that he wishes to bring about and seeks by his actions to make it succeed." *Id.* (citation omitted). The court in *Garden Grove* reasoned that police officers returning medical marijuana did not fall into that category. If police officers actually returning marijuana to possessors cannot be liable as aiders and abettors, we fail to see how County officials who obey state law in passing a zoning ordinance consistent with the AMMA or processing applications for zoning clearance under the AMMA can be liable as aiders or abet-

tors. *See also Joe Hemp's First Hemp Bank*, 2016 WL 375082 at \*3 (holding that city's requirement for medical marijuana dispensaries to obtain permit was mere regulation and did not require operators to aid and abet violation of or to conspire to violate CSA).

¶ 53 Third, the County rationalizes its fear of prosecution by relying on past statements of federal prosecutors, who themselves are limited in deciding what cases to prosecute. *See* 28 U.S.C. § 542 ("Each assistant United States attorney is subject to removal by the President."); *United States v. Cox*, 342 F.2d 167, 171 (5th Cir. 1965) (stating the United States Attorney General exercises discretion as to whether to prosecute a particular case); *United States v. Baldwin*, 541 F.Supp.2d 1184, 1196 (D.N.M. 2008) ("[T]he Attorney General has the power to supervise and direct United States Attorneys and Assistant United States Attorneys in the discharge of their duties."). However, no evidence of a credible threat of prosecution substantiates the County's impossibility preemption argument. *See Okun*, 231 Ariz. at 466–67, ¶¶ 15–17, 296 P.3d 998 (refusing to address whether CSA preempts AMMA under impossibility analysis because no actual or threatened prosecution existed, and holding the State lacked standing to argue preemption because it had no stake in the controversy); *Sibley v. Obama*, 819 F.Supp.2d 45, 49–50 (D.D.C. 2011) (determining plaintiff who asserted he risked prosecution under the CSA did not have standing because even a memorandum from a deputy attorney general stating state law was not a defense to enforcement of federal law did not establish that threat was credible, actual, immediate, or even specific to plaintiff).

¶ 54 As White Mountain notes, this fear of prosecution has now become even less credible or immediate, if not moot, given acts by Congress since entry of the judgment here. On December 18, 2015, Congress passed the Consolidated Appropriations Act. Consolidated Appropriations Act, 2016, Pub. L. No. 114–113, 129 Stat. 2242 (2015). Pursuant to that act, the Department of Justice may not use any of its funding "with respect to ... Arizona ... to prevent [it] from implementing [its] own laws that authorize the use,

distribution, possession, or cultivation of medical marijuana." *Id.* at § 542, 2332–33. The Ninth Circuit Court of Appeals has held that the Appropriations Act prohibits the Department of Justice from interfering with the implementation of such laws not simply by suing states with medical marijuana laws but by prosecuting private individuals under the CSA when those individuals are compliant with the state medical marijuana law in their jurisdiction. *United States v. McIntosh*, 833 F.3d 1163, 1176–78 (9th Cir. 2016). This development vitiates Appellants' argument that at this time they might be subject to federal criminal prosecution under the CSA for aiding and abetting violations of that act if they acted in compliance with the AMMA.[20]

¶ 55 In sum, the County does not show how the relief ordered here makes it impossible to comply with the AMMA due to a risk of prosecution under federal law and specifically the CSA. The County's broad contention that any act which is in any way related to fulfilling duties mandated by the AMMA is somehow criminal under federal law, does not persuade us that the AMMA is preempted. "Impossibility pre-emption is a demanding defense," and the County has not carried its burden. *Wyeth v. Levine*, 555 U.S. 555, 573, 129 S.Ct. 1187, 173 L.Ed.2d 51 (2009).

¶ 56 We heed the Supreme Court's warning that "[p]re-emption analysis should not be a freewheeling judicial inquiry into whether a state statute is in tension with federal objectives, but an inquiry into whether the ordinary meanings of state and federal law conflict." *Id.* at 588, 129 S.Ct. 1187 (internal quotation marks and citation omitted). Appellants have not established that the relief granted here relating to the AMMA is an obstacle to effectuating Congress' commerce goals embodied by the CSA or poses a "positive conflict" with the CSA such that state and federal law cannot "consistently stand together." 21 U.S.C. § 903.

**D. Interference with County Attorney's Advice to the County**

¶ 57 The County maintains this case also involves a claim against the County Attorney for providing legal advice. According to the County, White Mountain's complaint sought "an order in mandamus compelling Mr. Montgomery to change his advice to the County."

¶ 58 We do not read the record in this case to support the County's characterization of the claim. Regardless of whether we view the case from the perspective of the complaint or the superior court's order, this is not a case about legal advice, a request to change legal advice, or a discretionary act. The County is the "local jurisdiction" for purposes of A.A.C. R9–17304(C)(6) and refused to comply with its duties to issue the zoning clearances. The County's refusal to comply with the nondiscretionary ministerial act contemplated by A.A.C. R9–17–304(C)(6) is not immune from mandamus just because the County happened to receive advice from the County Attorney along the way. The County's argument, taken to its logical extension, would result in precluding mandamus relief any time a county attorney rendered advice in a matter and allow a county to possibly disobey state or federal law simply because its attorney advised them on the law. This is an untenable result. The advice of a county attorney is just that: advice. It is not a dictate that supersedes the law.

¶ 59 The superior court did not dictate to the County Attorney how to advise his client. The County Attorney is free to advise his client as he sees fit. However, if a court determines that the County violated state law in acting, the County is bound by that judicial decision. Accordingly, the court did not abuse its discretion in fashioning the mandamus relief based on the County's failure to comply with state law. *See Sines v. Holden*, 89 Ariz. 207, 209, 360 P.2d 218 (1961)

---

20. As applied to the County issuing zoning clearances to White Mountain, the County's argument about potential federal prosecution is moot. The superior court, not the County, ultimately issued the necessary zoning clearance as part of its November 25, 2013, judgment. In that judgment, the court held that White Mountain had "fully complied with local zoning restrictions, because there [were] none," ordered ADHS to process White Mountain's application for a registration certificate, and enjoined ADHS from denying White Mountain's application based on the failure to provide evidence of compliance with local zoning ordinances.

(stating the writ of mandamus is discretionary).

## II. Zoning Appeal

¶ 60 As discussed *supra* at ¶¶18–19, in the Zoning Appeal, the superior court determined that the Second Text Amendment violated the AMMA because it limited MMDs to IND–3 zones, none of which existed in CHAA 49, and because it prohibited any land use in violation of federal law. The court also determined that the doctrine of automatic revival did not apply to revive the First Text Amendment. Thus, upon striking the Second Text Amendment, there were briefly no zoning restrictions for MMDs in unincorporated Maricopa County until the County adopted the Third Text Amendment. *See supra* ¶¶21–22.

¶ 61 The County argues the superior court erred because: (1) the record was undisputed that limiting MMDs to IND–3 zones was reasonable; (2) the AMMA did not limit County authority to adopt ordinances restricting where MMDs could exist; and (3) the Court's order was impermissibly broad because it was not limited to CHAA 49, and it misunderstood that because the MCZO was permissive, no zoning permitted MMDs after the Second Text Amendment was struck.[21]

### A. Standard of Review

¶ 62 We review *de novo* whether summary judgment was warranted. *Mathis*, 231 Ariz. at 109, ¶ 17, 290 P.3d 1226; *see also City of Tempe v. Outdoor Sys., Inc.*, 201 Ariz. 106, 111, ¶ 14, 32 P.3d 31 (App. 2001) ("We view the facts de novo and in the light most favorable to the non-moving party."). "We will affirm the superior court if its determination is correct for any reason, even if that reason was not considered by the court."

*Mathis*, 231 Ariz. at 109, ¶ 17, 290 P.3d 1226. We review the superior court's interpretation of statutes and mixed questions of law and fact *de novo. Wilmot v. Wilmot*, 203 Ariz. 565, 568–69, ¶ 10, 58 P.3d 507 (2002).

### B. Striking the Second Text Amendment as It Applied to MMDs

¶ 63 Two provisions of the Second Text Amendment are at issue in this appeal: first, that no acts may take place in any zone which are in violation of federal law, and second, that MMDs are limited to IND–3 zones. The County does not argue in its briefs that the first provision was valid under the AMMA, thus waiving that issue on appeal. *Ness*, 174 Ariz. at 502–03, 851 P.2d 122.

¶ 64 Regardless of waiver, however, the Second Text Amendment's prohibition of any acts *in violation of federal law*, as applied to the MMDs operating consistently with the AMMA, conflicts with the AMMA.[22] Accordingly, we affirm the superior court's summary judgment based on this provision and do not address whether limiting MMDs to IND–3 zones violates the AMMA.[23]

¶ 65 Zoning regulation is "based upon the police power of the state" and, generally speaking, "a matter of statewide concern." *Levitz v. State*, 126 Ariz. 203, 204, 613 P.2d 1259 (1980) (internal quotation marks and citations omitted). The counties' power to zone is delegated by statute and zoning enactments must be in accordance with the authority granted. *Transamerica Title Ins. Co. v. City of Tucson*, 157 Ariz. 346, 350, 757 P.2d 1055 (1988); *see* Ariz. Const. art. 13, § 2 (requiring city charters to be "consistent with, and subject to, the Constitution and laws of the state"); *see also City of Tucson v. State*, 229 Ariz. 172, 174–76, ¶¶ 10, 19, 273 P.3d 624 (2012) (stating adoption of city char-

---

21. The County also listed as an issue that the superior court violated separation of powers by ascribing a motive to the County in adopting the Second Text Amendment. The County waived this issue by not arguing it in its appellate briefs. *Ness*, 174 Ariz. at 502–03, 851 P.2d 122.

22. Our holding would also apply to the poison pill provisions of the First and Third Text Amendments as to MMDs.

23. We understand the County to be arguing that the superior court erred in striking the Second Text Amendment and not that the court erred in holding that White Mountain had complied with the zoning requirements if we did not uphold or address the court's ruling on IND–3 zoning.

ter is "effectively, a local constitution ... without action by the state legislature").

¶ 66 Contrary to the County's contention, the zoning issue is not whether the AMMA preempts local jurisdictions from regulating or restricting the location of MMDs. Rather, we are called upon to harmonize two statutory provisions, with the goal of giving meaning to both while also construing the AMMA to give effect to the voters' intent. *Gear*, 239 Ariz. at 345–47, ¶¶ 11, 19, 372 P.3d 287. Pursuant to counties' general authority to zone, counties "may adopt a zoning ordinance in order to conserve and promote the public health, safety, convenience and general welfare." A.R.S. § 11–811(A) (2012); *see* A.R.S. § 11–802(A) (2012) (stating county, "in order to conserve and promote the public health, safety, convenience and welfare," is under a mandatory duty to "plan and provide for the future growth and improvement of its jurisdiction"). However, pursuant to the AMMA, "counties may enact *reasonable zoning regulations that limit the use of land for [MMDs] to specified areas* in the manner provided in ... title 11, chapter 6, article 2." [24] A.R.S. § 36–2806.01 (emphasis added). Thus, the issue is whether a local jurisdiction can ban MMDs under the guise of "reasonable zoning" by authorizing MMDs in an area but then adding a poison pill to that use, prohibiting an MMD from conducting business in violation of any law.

¶ 67 We hold that such a ban is not consistent with the express provision of the AMMA that local jurisdictions "may enact reasonable zoning regulations that limit the use of land for [MMDs] to specified areas in the manner provided in ... title 11, chapter 6, article 2." A.R.S. § 36–2806.01. If a zoning provision violates the AMMA, it is void. *Jachimek v. Superior Court*, 169 Ariz. 317, 318–19, 819 P.2d 487 (1991).

¶ 68 We interpret statutes to give effect to the legislative intent behind them and, in the case of statutes created pursuant to an initiative, to give effect to the voters' intent. *Calik v. Kongable*, 195 Ariz. 496, 498, ¶ 10, 990 P.2d 1055 (1999); *see Mathis*, 231 Ariz. at 109, ¶ 19, 290 P.3d 1226 ("Our primary purpose in construing a constitutional amendment is to

effectuate the intent of those who framed it and the electorate that approved it. We first examine the plain language of the provision and, if it is clear and unambiguous, we generally subscribe to that meaning."). The plain meaning of the statute is the best indicator of that intent. *U.S. Parking Sys. v. City of Phoenix*, 160 Ariz. 210, 211, 772 P.2d 33 (App. 1989) ("An unambiguous statute should be interpreted to mean what it plainly states unless an absurdity results."); *County of Cochise v. Faria*, 221 Ariz. 619, 622, ¶ 9, 212 P.3d 957 (App. 2009) ("We look first to the plain language of the statute because that is the best indicator of legislative intent.").

¶ 69 Section 36–2806.01 is plain on its face. It does not preempt local zoning restrictions on MMDs but authorizes local jurisdictions to enact *"reasonable zoning regulations that limit the use of land for [MMDs] to specified areas* in the manner provided in ... title 11, chapter 6, article 2." (emphasis added). As such, a local jurisdiction cannot adopt a zoning regulation that is self-defeating by banning MMDs. A ban on MMDs cannot be a "reasonable zoning regulation[ ] ... limit[ing MMDs] to specified areas...." Such an interpretation of § 36–2806.01 would nullify the basis for the AMMA, to permit use of marijuana for medical purposes consistent with the AMMA's terms and provide for a regulatory system of dispensaries to operate in compliance with the terms of the AMMA. Although § 36–2806.01 references the general authority of counties to establish zoning regulations pursuant to A.R.S. §§ 11–811 to –820, § 36–2806.01 is the more specific of the two statutory schemes. It therefore limits local jurisdictions' zoning powers to ensure those zoning decisions comply with the AMMA. *Baker v. Gardner*, 160 Ariz. 98, 101, 770 P.2d 766 (1988) (stating courts "construe seemingly conflicting statutes in harmony when possible," but "when two statutes truly conflict, either the more recent or more specific controls"); *see also Johnson v. Mohave County*, 206 Ariz. 330, 333, ¶ 11, 78 P.3d 1051 (App. 2003) (stating that in addition to harmonizing seemingly-conflicting statutes when possible, courts should construe statutes in conjunction with other statutes that relate to

---

**24.** In 2012, Article 2 consisted of A.R.S. §§ 11–811 to –818 (2012).

the same subject or purpose, giving effect to all statutes involved). Indeed, in *Ter Beek*, the Michigan Supreme Court held that a similar prohibition of acts in violation of federal law as applied to medical marijuana use and cultivation was in violation of state law. 846 N.W.2d at 533–34, 542–43.

¶ 70 Because the Second Text Amendment's provision barring any conduct in violation of federal law as applied to MMDs was in conflict with the limitation on zoning authority in the AMMA, the superior court did not err in striking that portion of the Second Text Amendment solely as it applied to MMDs.

¶ 71 We find further support for our conclusion based on rules of statutory construction. Analysis of this issue cannot be based exclusively on the County's broad zoning powers under A.R.S. § 11–811, but whether such authority was limited by the language in the AMMA that "counties may enact reasonable zoning regulations that limit the use of land for [MMDs] ... to specified areas in the manner provided in ... title 11, chapter 6, article 2." A.R.S. § 36–2806.01. If the voters had wanted the County to merely exercise its zoning authority under § 11–811, it would have simply stated that counties may provide zoning restrictions pursuant to § 11–811. We therefore must give some meaning to the language of A.R.S. § 36–2806.01 requiring "reasonable zoning regulations that limit the use of land for [MMDs] to specified areas" to give it effect and avoid redundancy. *See Deer Valley Unified Sch. Dist. No. 97 v. Houser*, 214 Ariz. 293, 296, ¶ 8, 152 P.3d 490 (2007) (stating courts interpret statutes so no part will be redundant); *County of Cochise*, 221 Ariz. at 622, ¶ 9, 212 P.3d 957 ("[E]ach word or phrase of a statute must be given meaning so that no part is rendered void, superfluous, contradictory or insignificant.") (citation omitted).

¶ 72 Harmonizing these sources of authority clarifies that the AMMA envisioned MMDs would be permitted in specified areas within a county and that the reference to "the manner provided in ... title 11, chapter 6, article 2" would relate to the procedure for zoning. Banning all MMDs because they violate federal law is inconsistent with the express provisions of the AMMA limiting local jurisdictions' zoning authority to "reasonable zoning regulation ... limit[ing] MMDs] to specified areas...." [25]

¶ 73 The County is obviously concerned about medical marijuana and has attempted to ban MMDs if they violate the CSA even if they would be operating within the requirements of the AMMA. However, the voters of Arizona have spoken and want MMDs to operate subject to the conditions of the AMMA, including reasonable zoning restricting MMDs to specified areas. Such a limited role for local jurisdictions does not give them carte blanche to ban private enterprise under the AMMA under the guise of regulation. *Cf. Granholm v. Heald*, 544 U.S. 460, 484–85, 489–90, 493, 125 S.Ct. 1885, 161 L.Ed.2d 796 (2005) (holding that Twenty–First Amendment to the United States Constitution, which grants states broad power to regulate liquor, did not permit States to favor local wineries over out-of-state wineries under guise of tax collection and protecting minors).

¶ 74 The County's reliance on *City of Riverside v. Inland Empire Patients Health & Wellness Center, Inc.*, 56 Cal.4th 729, 156 Cal.Rptr.3d 409, 300 P.3d 494 (2013), is misplaced. In *Riverside*, the California Supreme Court addressed a local zoning regulation that banned all medical marijuana dispensaries from operating in the city and banned any use prohibited by federal law. *Id.*, 156 Cal.Rptr.3d 409, 300 P.3d at 496. In holding that the ban was not preempted by California's Compassionate Use Act of 1996

**25.** Moreover, taking the Appellants' argument to its logical conclusion, if a county desired to ban MMDs on unincorporated county land and all incorporated jurisdictions within the county did the same, then MMDs would be effectively banned from the county. This would violate the apparent requirement of the AMMA that there be at least one MMD per county if a party applying to operate an MMD met AMMA requirements. *See* A.R.S. § 36–2804(C) (stating ADHS "may not issue more than one [MMD] registration certificate for every ten pharmacies ... except ... to ensure ... [ADHS] issues at least one [MMD] registration certificate in each county in which an application has been approved").

("CUA")[26] and the more recent Medical Marijuana Program ("MMP"),[27] the court repeatedly emphasized that both the CUA and the MMP were extremely limited, exempting qualified patients and caregivers from criminal prosecution and state nuisance laws while acting in compliance with the two statutes. *Id.* at 500–01, 503, 506–07, 510–11, 300 P.3d at 496. As the court summarized: "The CUA and the MMP create no all-encompassing scheme for the control and regulation of [medical marijuana]. These statutes, both carefully worded, do no more than exempt certain conduct by certain persons from certain state criminal and nuisance laws against the ... distribution" of marijuana. *Id.* at 509, 300 P.3d at 496.

¶ 75 Indeed, the court in *Riverside* also noted that neither statutory scheme covered areas of zoning, land use planning, or business licensing so as to preclude local jurisdictions from banning dispensaries. *Id.* at 506, 300 P.3d at 496. It emphasized that no provision within either statutory scheme restricted "the broad authority traditionally possessed by local jurisdictions to regulate zoning and land use planning ... or require[d] local zoning and licensing laws to accommodate the cooperative or collective cultivation and distribution of medical marijuana." *Id.* at 506–07, 300 P.3d at 496. It also noted that the laws only imposed two obligations on local governments: to issue identification cards and to prohibit police from refusing to accept an identification card as a protection against arrest for possession, transportation, delivery, or cultivation of medical marijuana. *Id.* at 507 n.7, 300 P.3d at 496. Finally, the court also rejected the city's argument that two amendments to the MMP, which authorized local jurisdictions to regulate or restrict the establishment of a dispensary, were intended to grant jurisdic-

tions the right to ban dispensaries. *Id.* at n.8 (declining to resolve the issue but stating court was not convinced the legislature intended the amendments to provide affirmative authority for total bans).[28]

¶ 76 In contrast, here we have a complex regulatory scheme of MMD operation subject to ADHS regulations. Although the AMMA recognized the role of local jurisdictions, it limited the power of such jurisdictions to "reasonable zoning regulation ... limit[ing MMDs] to specified areas." A.R.S. § 36–2806.01. The nature of a regulated system of MMDs, subject to ADHS oversight, and the express language that local jurisdictions can only pass reasonable zoning regulations limiting dispensaries to specified areas is the exact antithesis of the California system at issue in *Riverside*. We need not reach the possible scope of such zoning restrictions because we conclude that a total ban on MMDs under the poison pill provision violates A.R.S. § 36–2806.01.

¶ 77 We also reject the County's argument that the superior court erred in striking the Second Text Amendment and in concluding that once the ban on MMDs was struck, there were no prohibitions on MMDs in the unincorporated portions of the County. The County argues that because the MCZO is permissive in nature, that is, use is prohibited unless specifically authorized, and because none of the MCZO zoning categories list MMDs as a permitted use, the absence of MMDs as a permitted use means such use is prohibited. The County's argument ignores that the court struck all provisions of the Second Text Amendment as they specifically related to MMDs. Thus, as applied to MMDs, any permissive nature of the Second Text Amendment was also struck, and the court correctly held that the State should process

26. Cal. Health & Safety Code § 11362.5 *et seq.*

27. Cal. Health & Safety Code § 11362.7 *et seq.*

28. The first statute, California Health & Safety Code § 11362.768, limited dispensaries to a certain distance from a school, but also provided that nothing in that section could prohibit a local jurisdiction "from adopting ordinances or policies that further restrict the location or establishment of a medical marijuana ... dispensary" or "preempt local ordinances, adopted prior to [the

amendment], that regulate the location or establishment of a medical marijuana ... dispensary...." The second statute, California Health & Safety Code § 11362.83, provides that nothing in the MMP shall prevent a local government from adopting "local ordinances that regulate the location, operation, or establishment of a medical marijuana cooperative or collective," the civil and criminal enforcement of those ordinances, or enacting "other laws consistent with" the MMP.

White Mountain's application because there were no longer any AMMA-compliant zoning regulations.

¶ 78 Finally, the County also argues that the court's order striking the entire Second Text Amendment as applied to MMDs was too broad. To the extent that argument goes to the MCZO being permissive and the court's conclusion that by striking the Second Text Amendment there were no zoning prohibitions for MMDs, we have rejected that argument *supra* ¶78. To the extent the County is contending a court cannot substitute its judgment for that of the zoning authority because zoning is a legislative function, that did not occur here. All the court did was strike the zoning provisions as applied to MMDs as violative of the AMMA.

¶ 79 There is no genuine issue of material fact precluding the superior court's grant of summary judgment. As a matter of law, the Second Text Amendment's bar of any activity prohibited by law as applied to MMDs that were in compliance with the AMMA was self-defeating and in violation of the AMMA.[29]

## III. Attorneys' Fees Appeal

■ ¶ 80 In the Attorneys' Fees Appeal, the County argues that the superior court's $5000 sanction pursuant to A.R.S. § 12–349 was not justified because the County did not act in bad faith and asserted a reasonable defense. The County does not challenge the amount or other statutory bases for the separate fee award. *See* A.R.S. §§ 12–348 (Supp. 2013) and –2030 (2016). Thus, we affirm the award of $190,000 in fees under those statutes and the $3700.02 in costs. We review only whether awarding the separate sanction pursuant to A.R.S. § 12–349 was clearly erroneous. *See Bennett v. Baxter Grp., Inc.,* 223 Ariz. 414, 422, ¶ 31, 224 P.3d 230 (App. 2010) (stating this court views the evidence in light most favorable to affirm award under

A.R.S. § 12–349 and reviews superior court factual findings for clear error); *Johnson,* 206 Ariz. at 334, ¶ 18, 78 P.3d 1051 (stating the supreme court will affirm an award unless clearly erroneous).

¶ 81 Section 12–349 provides the superior court with discretion to award "double damages of not to exceed five thousand dollars" if a party "brings or defends a claim without substantial justification" or "unreasonably expands or delays the proceeding." "Without substantial justification" means that "the claim or defense is groundless and is not made in good faith." A.R.S. § 12–349(F); *see also Reynolds v. Reynolds,* 231 Ariz. 313, 318, ¶ 16 & n. 5, 294 P.3d 151 (App. 2013) (noting that prior to January 1, 2013, the statute required a finding that the claim or defense constituted harassment, is groundless and is not made in good faith, with the element of harassment eliminated after January 1, 2013); *Johnson,* 206 Ariz. at 334, ¶ 16, 78 P.3d 1051 (explaining that party requesting fees must prove elements by a preponderance of the evidence).[30]

¶ 82 Section 12–350 (2016) provides "the court shall set forth the specific reasons" for an attorneys' fees award made pursuant to § 12–349 "and may include certain listed factors, as relevant, in its consideration." *See Bennett,* 223 Ariz. at 421, ¶ 28, 224 P.3d 230 (stating purpose of findings is to assist the appellate court on review).

¶ 83 The superior court determined that the County's opposition to White Mountain's request for a declaration that the Second Text Amendment was unreasonable was "without substantial justification" because the County's position was "clearly unjustified in light of [the superior court's] adverse findings on the preemption." *See* A.R.S. § 12–349(A)(1). The court also determined that "the County's defense of the zoning ordi-

**29.** Additionally, we need not reach the issue of whether that order should result in reviving the First Text Amendment as argued by White Mountain. After the court struck the Second Text Amendment, the County adopted the Third Text Amendment, which permitted a broader range of zoning for MMDs and stated that the Third Text Amendment would be automatically void if the appellate court reversed the superior court's or-

der striking the Second Text Amendment. Since we have affirmed the court on striking the Second Text Amendment, any issue as to revival of the First Text Amendment is moot.

**30.** Our decision as to the sanction under § 12–349 is the same under both versions of the statute.

nance unreasonably expanded *and* delayed the proceedings."

¶ 84 Even interpreting the record in the light most favorable to affirming the sanction award, we cannot conclude that the County acted in bad faith. First, the court expressly found that the County had not acted in bad faith, but only that its defense of the action was unjustified once the court had ruled on preemption. The court's findings assume the County's argument that the Second Text Amendment was consistent with the AMMA was either groundless or not made in good faith. However, the court had already ruled that the County had not acted in bad faith and at a minimum, we cannot say that the County's reasonableness argument for zoning MMDs was groundless, at least as to the IND–3 zone. Although the County's argument was not successful on that issue, it had some evidentiary basis as to the reasonableness of the IND–3 zoning classification in the abstract, simply missing the issue that it was not the reasonableness of the classification, but that such a classification barred MMDs because their acts violated the CSA.

¶ 85 Nor can we agree that the County's non-preemption arguments unreasonably expanded or delayed the proceedings. White Mountain had alleged and moved for partial summary judgment on the issue of whether the zoning was reasonable regardless of preemption. The County did not unreasonably expand or delay the proceeding by attempting to defend against that claim.

¶ 86 Therefore, we reverse the award of a $5000 sanction but otherwise affirm the fee award to White Mountain.

### IV. Attorneys' Fees and Costs on Appeal

■■■■ ¶ 87 White Mountain requests attorneys' fees and costs on appeal pursuant to A.R.S. §§ 12–348, and –2030. Because the State intervened in the superior court proceedings, appealed the court's denial of its counterclaim for declaratory relief, and has been denied such relief on appeal, White Mountain has prevailed in an adjudication of the merits against the State. *See* A.R.S. § 12–348(A)(3) (stating a party is entitled to attorneys' fees if it prevails on an adjudication of the merits in proceeding pursuant to A.R.S. § 41–1034 which involves actions for declaratory judgment filed in accordance with the Uniform Declaratory Judgments Act). Thus, White Mountain is entitled to fees against the State. It is also entitled to its costs on appeal against the State pursuant to A.R.S. § 12–348. Similarly, because the County appealed from the summary judgment on preemption and zoning and we affirm the superior court on those issues, White Mountain is entitled to reasonable attorneys' fees and costs against the County in the Preemption and Zoning Appeals. Any such award will be joint and several against the State and County.

### CONCLUSION

¶ 88 For the reasons stated above, we affirm all of the judgments entered for White Mountain except we reverse the award of sanctions of $5000 against the County. We will also award White Mountain its reasonable attorneys' fees and costs against the State and County on appeal upon timely compliance with ARCAP 21.